## Case No. 9,420.

### In re MENDELSOHN.

[3 Sawy. 342;[1] 12 N. B. R. 533.]

District Court, D. California. June 8, 1875.

RIGHT OF ATTACHING CREDITORS TO OPPOSE ADJUDICATION—ASSIGNMENT AS AN ACT OF BANKRUPTCY.

1. An attaching creditor may intervene and oppose an adjudication in involuntary bankruptcy on the ground of fraud and collusion between the petitioner and debtor.

[Cited in Re Williams, Case No. 17,706; Re Scrafford, Id. 12,557; Re Jonas, Id. 7,442; Re Austin, Id. 662.]

[Cited in Risser v. Hoyt, 53 Mich. 198, 18 N. W. 611.]

2. Even a fair general assignment for the benefit of creditors is an act of bankruptcy, because it necessarily defeats the operation of the bankrupt act [of 1867 (14 Stat. 517)].

[Cited in Globe Ins. Co. v. Cleveland Ins. Co., Case No. 5,486.]

3. Within the meaning of the law defining acts of bankruptcy an assignment, invalid under the laws of the state where made, but used as a means for giving a preference, is an act of bankruptcy.

[Cited in Re Lawrence, Case No. 8,133.]

D. Mendelsohn filed his petition praying an adjudication of bankruptcy against his brother, S. Mendelsohn. On the return day of the order to show cause, the alleged bankrupt, S. Mendelsohn, did not appear and on motion a default was entered, and thereupon an adjudication was asked for. At this stage in the proceedings certain creditors appeared and asked leave to intervene and contest the facts in the petition. They allege in their petition that they are creditors and have a lien, by attachment, on the goods of the debtor; that the proceeding for adjudication is collusive and fraudulent, and the alleged debt of the petitioning creditor a sham. The petitioning creditor objected to their being allowed to contest his petition, upon the ground that until an adjudication the case is solely between himself and the debtor. This question was reserved, and testimony was taken upon the petition of intervention and the whole case submitted. One of the acts of bankruptcy charged in the petition for adjudication was that the debtor made an assignment of his property to Messrs. Davis & Co. with intent to give a preference to one or more of his creditors and to defeat or delay the operation of the act. An assignment was in fact executed by the debtor to Davis & Co. purporting to be in trust for all his creditors. The circumstances attending this assignment were that one Stone, the agent of Davis & Co., was pressing the debtor for payment of their claim, and procured the execution of the assignment with the understanding, as he says, that Mendelsohn should remain in possession of the goods, and carry

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

on the business as before its execution; that on Monday of each week the debtor should pay $75, to be applied to the payment of creditors whose claims exceeded $100, and that Mendelsohn should provide for the payment of the small creditors himself. The arrangement was so far acted on that some $150 were paid to Stone, which is now on deposit for the benefit of the creditors who are entitled to it.

Marcus Rosenthal, for petitioning creditor.

F. G. Newlands, for intervening creditors.

HILLYER, District Judge. The first question is as to the right of these creditors having attachments to intervene and oppose the adjudication at this time. That the creditors now asking to intervene have a direct interest in opposing the adjudication is plain. They have attached the debtor's property, and if proceedings in bankruptcy do not go forward, will have a lien thereon for their security. If, however, there is an adjudication and an assignment their attachment will be dissolved, and their right to prosecute their suit to judgment suspended.

[After adjudication, it has been settled in this court, that attaching creditors may move to set it aside; that they have an interest in and a clear right to be heard and resist the proceedings on the ground that the court is without jurisdiction. Fogerty v. Gerrity [Case No. 4,895]. It was also held in that case that all other creditors are parties to and bound by the proceedings, so that, although neither the petitioning creditor nor the debtor objected to the jurisdiction, that was not sufficient to confer jurisdiction, even if it could be so conferred.] [2]

Such being the case, it cannot well be maintained that there is no relief for these attaching creditors, if it be true, as alleged, that the debt of the petitioning creditor is not a just debt, and yet the debtor colluding with him admits it, and consents to an adjudication. A court of equity would grant relief against, and annul a decree so obtained by fraud, for fraud infects and corrupts the judgments of all courts. Story, Eq. Pl. § 426. In some form, then, it must be admitted that persons whose rights are injuriously affected by a fraudulent adjudication may apply for and obtain relief. No court ought or can close its ears to this petition.

[The bankrupt law makes no provision in these cases for notice to the creditors in general, and the only necessary parties are the petitioning creditors and the debtor; yet this is no sound reason for denying the right to intervene upon good grounds being shown, such as collusion and fraud on the part of the original parties to the proceeding.] [2]

An intervener, it is said, may come in at any stage of the cause, even after judgment, if an appeal can be allowed on such judgment. Bouv. verb. "Intervention." The question is essentially one of practice, and to my mind it is better in every aspect of it, to allow the attaching creditors to come in and be heard before the adjudication, than to wait until a decree is made and compel them then to impeach it for the fraud which would have defeated it in the first instance. I think, therefore, that these parties showing that they have a direct interest in defeating an attempted fraud like the one set up, should be allowed to intervene before the adjudication for the protection of their interest.

I am aware that there have been decisions which at first blush seem to be against the practice here adopted; but on examination they will, most of them, be found not really so, and to differ from the present case either in the fact that the adjudication would not have the effect to render unavailing any security of the creditors petitioning to intervene, or that the petitioners were mere creditors with no other claim to be heard. In re Bush [Case No. 2,222]; In re Boston, H. & E. R. Co. [Id. 1,679].

Looking, then, to the evidence for and against the validity of the petitioning creditors' debt, I find that the interveners have failed in their attempt to show it to be fraudulent. That leaves for decision the question whether the assignment was an act of bankruptcy.

[2] [But this was said in a case in which certain creditors applied to have the adjudication set aside, on the ground that a certain assignment had been made by the debtor for the benefit of his creditors, to which the petitioning creditor it seems was not a party, though he assented to the assignment. Now, in this case, the adjudication in bankruptcy did not have the effect to render unavailing this assignment; if valid, against the assignee, it could still be maintained against the assignee. No want of jurisdiction was alleged, nor fraud, nor collision. What was said by the learned judge about the right of creditors to intervene before adjudication was unnecessary to the decision. In Re Boston H. & E. R. Co. [supra], a motion was made by a creditor before adjudication for leave to defend against the petition. But the court said the question, before the adjudication at least, was between the debtor and the petitioning creditors, "with which no outside party, sustaining merely the relation of a person who claims to be a creditor of the debtor, can be allowed to interfere." No want of jurisdiction was alleged, no fraud or collusion. Nor does it appear that the direct effect of the adjudication and assignment would deprive the creditor of any security which he then had for his debt. He was, as the court says, a mere creditor, with no other claim to be heard. On the whole, then, the right of the attaching creditors to appear and oppose the adjudication on the grounds alleged cannot properly be denied them, and they

---

[2] [From 12 N. B. R. 533.]

[2] [From 12 N. B. R. 533.]

must be heard. Of course, what has been said is not meant to convey the idea that the fact that a creditor has an attachment lien is of itself any ground for denying the adjudication; it only gives him a right to be heard. If there is no fraud or want of jurisdiction, the fact that the adjudication will dissolve his lien is no ground for its denial. And first, it is denied that the debt of the petitioning creditor is valid and just. The evidence for petitioning creditor is that the debt is made of two items, as follows: In 1873 the petitioning creditor was in partnership with J. Zacharias and his brother; the debtor bought goods of the firm. When the firm was dissolved, the petitioning creditor was .charged and his brother credited on the firm books with the balance due, four hundred dollars; fifty dollars was paid on this in January, 1874, leaving three hundred and fifty dollars balance due. Afterward the petitioning creditor formed a copartnership. Rub and the debtor bought of this firm goods to the amount of over one thousand dollars. When Mr. Wentenrich came in. in July, 1874, he refused to give credit to S. Mendelsohn, and the amount due Rub and D. Mendelsohn was charged and credited as before to the extent of D. M.'s profits, viz., four hundred and ninety-seven dollars and thirteen cents. The balance of the firm debt was afterwards paid by S. Mendelsohn. There is no doubt of the existence of the firms and the purchase of the goods by the debtor as stated. I see no good ground to say that settlements were not made as stated also, and the charges made to the petitioning creditor.

[The only marks of suspicion are the fact that the debtor and petitioning creditor are brothers, and certain erasures on the ledger of Rub, Mendelsohn & Co. That the parties are brothers is a circumstance which warrants the court in scrutinizing the transaction closely, but not in inferring fraud from that alone. The clerk who made the entries swears they were made at the time they bear date, and explains the erasure, which was done by him. In the account, the whole amount due from S. M. to the firm had been charged to D. M. and credited to S. M. This was erased, and over it was written the amount agreed upon of D. M.'s profits, four hundred and ninety-seven dollars and thirteen cents. This was done, the clerk says, at the time it bears date. No plausible motive is shown or suggested for a false entry of this kind at that time. The book of original entries was shown, and the items of the account against the debtor correspond. The balance due the firm was paid by S. M. through the clerk, S. Friedman. After the last balance of one hundred and two dollars was paid, which ignored the firm account, no more payments were made. He says that for nine months past he has not seen D. M. at the store of S. M. On the other hand, the debtor stated. as they say. to Stone and to Baum, that the list he gave them was all he

owed, and the debt of D. M. was not on it. The debtor denies this, and it is shown that other creditors of his were not mentioned at the time. Of course, the failure of the debtor to state this debt to Stone and Baum is not proof that it did not exist, but merely a circumstance of suspicion, and a slight one, on the general charge of collusion and fraud.

[There is not, in my mind, from the evidence, any doubt that the petitioning creditor's debt was bona fide, and arose as stated. There is no pretense of any motive for trumping up a debt of this kind in this way against his brother one and two years ago. It is an everyday thing for embarrassed debtors to conceal the true state of their affairs from creditors who are pressing for payment; they overstate their assets, and understate their debts. It seems to be true that for nine months before these proceedings were commenced these brothers had not spoken to each other. The actions of the debtor, during the three or four weeks preceding the petition, show nothing to indicate a fraudulent purpose. He undertook to pay seventy-five dollars a week for his larger creditors, and to pay off the small ones; he agrees to sign the assignment to Davis & Co., under a belief that it was, as they desired he should believe, a valid one; and finally attempts to settle at twenty-five cents on the dollar. It is hard to reconcile all this with the idea that he was meditating and arranging for a fraudulent bankruptcy proceeding at the time. The evidence for the petitioning creditor is that no part of his debts has been paid, and this is not contradicted. Friedman's evidence shows that the payments he made were on account of the firm debt, and not that of the petitioning creditor. Two acts of bankruptcy are alleged, and it is urged that neither has been proved. The first is, that the debtor made an assignment of his property to Davis & Co., with intent to give a preference to one or more of his creditors, and to defeat or delay the operation of the act. An assignment was, in fact, executed by the debtor to Davis & Co., purporting to be in trust for all his creditors. The facts are that Stone, the agent of Davis & Co., was pressing the debtor for payment of their claim, and procured the execution of the assignment with the understanding, as he says, that Mendelsohn should remain in possession of the goods, and carry on the business as before its execution; that on Monday of each week the debtor should pay seventy-five dollars, to be applied to the payment of creditors over one hundred dollars; that M. should pay the small creditors himself. The arrangement was so far acted on that some one hundred and fifty dollars were paid to Stone, which sum is now on deposit for the benefit of creditors entitled to it. When the debtor failed to make payment of the seventy-five dollars weekly, and told them he could not, he was told that the property in the store belonged to the assignee. Suit was

afterwards begun, and the store and goods attached.] [2]

The weight of authority is decidedly that even a fair general assignment for the benefit of creditors is an act of bankruptcy, because it necessarily defeats the operation of the bankrupt act, and hinders and delays creditors. But it is said that this assignment was void, and could not therefore be an act of bankruptcy, and it is clear that under the Code of California, it was not a valid assignment. But admitting the assignment to be so defective that it could not be enforced, it is, it seems to me, looking to the use made of it in this case, as much an act of bankruptcy as if it had been executed with all the forms.

The attaching creditors say they knew from the first that it was void as an assignment, but sought to make the debtor believe it was valid in order to use it as an instrument for collecting their debts. The debtor appears to have so believed, and admits it was made with a view to giving a preference to some of his creditors, and says he named six creditors to Stone, whom he wanted paid first.

Here, then, was, to all intents and purposes, a transfer of the debtor's property, and acting upon it, he paid over the agreed sum per week to the creditors entitled under the assignment to share therein. Under the thirty-ninth section "any conveyance or transfer with intent to prefer" is an act of bankruptcy. The assignment in this case, though invalid as an assignment under the laws of California, was an attempt to transfer property with intent to prefer certain creditors named by the debtor.

A construction of section 39 is inadmissible, which would permit a debtor to do that by means of an invalid instrument, which he could not do by one properly executed. The bankrupt act, cannot be defeated by omitting some of the forms in executing the assignment, and then setting up such omission in defense to proceedings in bankruptcy.

Within the meaning of the law defining acts of bankruptcy, I think this was an assignment, and made with the intent charged, so that on the whole case there must be an adjudication of bankruptcy as prayed.