## In re CURTIS et al.

### (District Court, S. D. Illinois. January 24, 1899.)

**1. BANKRUPTCY—STATE INSOLVENCY LAW SUSPENDED.**
The Illinois act of July 1, 1877, regulating voluntary assignments for the benefit of creditors, and conferring on county courts of the state jurisdiction to administer estates so assigned, and to secure their equal distribution among creditors, according to the provisions of the act, is a general insolvency law; and its operation was suspended from and after July 1, 1898, by the enactment of the national bankruptcy law on that day.

**2. SAME—FOLLOWING STATE DECISIONS.**
A decision of the supreme court of a state, that a statute of that state regulating the administration and distribution of estates under general assignments for the benefit of creditors is an insolvency law, will be followed by the federal courts of bankruptcy in deciding upon the effect of the enactment of the national bankruptcy law upon the operation of such statute.

**3. SAME—ASSIGNMENT UNDER STATE LAW VOID.**
A voluntary general assignment for the benefit of creditors, made under a state insolvency law after the enactment of the national bankruptcy law, is an act of bankruptcy, contrary to the spirit of the bankruptcy act and to public policy as manifested therein, and, as against proceedings in bankruptcy subsequently instituted against the assignor, is void; and proceedings had in a state court upon such assignment, in accordance with the state law, are coram non judice, and do not prevent the court of bankruptcy, upon a proper petition against the assignor, from adjudging him bankrupt, and proceeding to the administration and distribution of his estate.

**4. SAME—PETITIONING CREDITORS—ESTOPPEL.**
An insolvent debtor having made a general assignment for the benefit of creditors pursuant to a law of the state, one of his creditors was induced to join with the debtor and his assignee in a petition to the state court having jurisdiction of the estate for a decree authorizing the conveyance of land of the debtor to such creditor in part payment of his claim, on the promise that he should receive a bond to indemnify him

91 F.—47

for any money he might be required to pay back in case the assets proved insufficient to pay other creditors proportionally; but neither the conveyance nor the bond was given. The creditor afterwards joined with others in a petition in involuntary bankruptcy against the debtor. *Held*, that the latter could not set up an estoppel against the petitioning creditor based on his participation in the proceedings in the state court.

5. SAME.

Where a debtor makes a general assignment for the benefit of creditors under a state statute providing for the administration and distribution by the state courts of estates so assigned, which statute requires creditors to file their claims within three months after notice from the assignee, on pain of being postponed until all proving creditors are paid in full, a creditor who files his claim, but derives no actual benefit from the assignment, the same being unlawful and void as being contrary to the national bankruptcy law, is not thereby estopped to file a petition in involuntary bankruptcy against the debtor.

In Bankruptcy. Petition in involuntary bankruptcy against Theodore E. Curtis, Augustin A. Curtis, Frederick H. Curtis, Albert Rohrer, John D. Batty, and James E. Hutchinson, surviving partners of Levi H. Henry, deceased.

Wilson & Warren and Smith & Hairgrove, for petitioning creditors.

John A. Bellatti and Brown, Wheeler, Brown & Hay, for respondent debtors.

ALLEN, District Judge. On the 11th day of August, 1898, certain co-partners, doing business in Waverly, Morgan county, Ill., under the firm name and style of the Bank of Waverly, made a general assignment of their individual and partnership property for the benefit of their creditors. This assignment, by its terms, was made pursuant to an act of the general assembly of the state of Illinois entitled "An act concerning voluntary assignments, and conferring jurisdiction therein upon county courts," in force July 1, 1877. A. W. Reagel, the assignee, took possession only of the partnership property, and proceeded, under the direction of the county court of Morgan county, to administer the estate. Pursuant to section 2 of the state statute, the assignee notified all of the creditors to present to him their claims, under oath or affirmation, within three months. The tenth section of the statute provides that creditors who do not file their claims within that time shall not participate in the dividends until after the payment in full of all claims so presented. Among the creditors who filed their claims under oath were George W. Caruthers, William T. Cox, and William A. Sims and others, who are petitioners herein. On the 23d day of September, 1898, the insolvent co-partners, Reagel, their assignee, and the creditor George W. Caruthers, filed a petition in the Morgan county court, and procured to be entered therein on the same day a decree authorizing and directing Reagel, assignee, Albert Rohrer, one of the co-partners, and his wife, Jane C. Rohrer, to execute and deliver to Caruthers a warranty deed conveying certain land, said to be the individual property of the co-partner Rohrer; the conveyance to be in part payment of Caruthers' claim; the decree, however, providing that such credit on Caruthers' claim should be subject to a proportionate rebate in the event that the assets of the

estate should be insufficient to pay all of the creditors in full. Caruthers joined in the petition, and acquiesced in the entry of the decree, upon the express understanding, however, and agreement of Albert Rohrer, one of the partners, made in the presence and with the approval of Reagel, the assignee, that they would provide him with a certain bond, fully indemnifying him for any moneys which he might be required to pay back, in the event the estate did not pay out in full. This bond they failed or refused to provide, and the conveyance to Caruthers was never made, but, instead, the assignee made arrangements to dispose of the land otherwise. On the 1st day of November, 1898,—at the very earliest date possible, under the national bankrupt act,—Caruthers, Cox, and Sims, whose claims aggregated about $18,000, filed their petition in this court, praying that the co-partners doing business as the Bank of Waverly might be adjudged bankrupts, alleging as an act of bankruptcy the making of the general assignment to Reagel for the benefit of their creditors. Afterwards other creditors joined in this petition. No question is made but that the requisite number of creditors and amount were joined in the petition. The debtors filed an answer to this petition, in which they admitted the act of bankruptcy, but alleged that the petitioners were estopped to set it up as such, by reason of their having filed their claims under it with the assignee, and that Caruthers was also estopped by reason of his participation in the Morgan county court proceedings. The act of bankruptcy being admitted, the question to be determined is whether this estate shall be administered in this court, and the property secured to the creditors, in the manner provided by the national bankrupt act, or whether it shall be administered under the general assignment made by the debtors in the county court.

There can be no doubt but that from the 1st day of July, 1898, the date of the passage of the national bankrupt act, the operation of all state insolvency laws was suspended. Manufacturing Co. v. Hamilton (Mass.) 51 N. E. 529; In re Bruss-Ritter Co., 90 Fed. 651; and In re Rouse, Hazard & Co. (Oct. term, 1898; Cir. Ct. App. 7th Cir.) 91 Fed. 96. If this estate is to be administered under the general assignment, it must be in the county court, and pursuant to the provisions of the Illinois statute, recited in the deed of assignment, giving county courts jurisdiction of such proceedings, and providing the manner in which the estate shall be secured to creditors. It is contended, however, that the particular statutes of Illinois relating to voluntary assignments are not such insolvent laws as are suspended by the national bankrupt act. But this question is not now an open one, since the supreme court of Illinois, in Hanchett v. Waterbury, 115 Ill., at page 227, 32 N. E. 196, thus interprets this very statute:

"A careful consideration of the several sections constituting the above act—particularly the seventh and last—leaves but little, if any, doubt in our minds that it is essentially, in its framework and detail, a general insolvent law, and that it was so intended by the legislature. By its provisions a new and special jurisdiction is created and conferred upon the county courts of the state, in exercise of which it is manifest they would, to say the least of it, be greatly embarrassed if any interference with them by other tribunals were permitted, where the jurisdiction has once attached. Indeed, to permit

such interference would practically defeat the chief object of the statute, namely, to provide a convenient, expeditious, and inexpensive tribunal, through the instrumentality of which an insolvent debtor may make an entirely equitable distribution of his effects among his creditors."

This construction of this law of Illinois by the supreme court of the state is conclusive upon this court.

In addition to this characterization by the supreme court of Illinois, it is to be observed that the main objects of this statute and of the national bankrupt act are identical. In Boese v. King, 108 U. S. 379, 2 Sup. Ct. 765, the supreme court of the United States, in writing of the last bankrupt act, finally states:

"The primary object of which, as this court has frequently announced, was to secure equality among the creditors of a bankrupt."

And this same conclusion was reached and announced in Buchanan v. Smith, 16 Wall. 277, and Mayer v. Hellman, 91 U. S. 496. In White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309, the voluntary assignment act of Illinois was also before the supreme court of the United States; and, speaking of its object, it is there said:

"The main object of this legislation is manifest. It is to secure equality of right among the creditors of a debtor who makes a voluntary assignment of his property."

The object of enumerating in the national bankrupt act what shall constitute an act of bankruptcy is for the very purpose of specifying with certainty what estates shall be administered in the bankrupt court. And, in declaring that whosoever should attempt to distribute his estate by a general assignment should be adjudged a bankrupt, it is also the plain intent of the law that such person should not be permitted, after the 1st day of July, 1898, to do so, but, instead, such estate must be administered in the precise manner pointed out by the national bankrupt act. From this it is obvious that not only the main objects of the state and federal laws are identical, but also that they both expressly provide a manner of administering the estate of whosoever shall make a general assignment. This being the case, one must yield to the other. One must be operative, and the other inoperative. Both cannot be in full force and effect at the same time. Which remains paramount and operative cannot be in doubt. That the state law shall be suspended is now well settled, and it is therefore the opinion of this court that the proceedings under the general assignment made by the Bank of Waverly, and in the Morgan county court, are wholly unauthorized and void. Public policy, as manifested by the bankrupt act, demands that all insolvent estates (of a certain value) shall be administered in the bankrupt court, and in accordance with a uniform system. The contract of assignment of August 11, 1898, which provides for administering the estate, not under the supervision of the bankrupt court and in accordance with the provisions of the bankrupt act, but in accordance with the statutes of Illinois, is contrary alike to the spirit of the national law now in force and to public policy. As against the proceedings herein in bankruptcy, the assignment under the state law is void. Although the bankrupt act of 1867 did not go as far as the present act does, and did not provide that the mere making of an assignment, per se, was an act of bank-

ruptcy, yet, whenever the supreme court could, it took the opportunity of declaring that, as against proceedings in bankruptcy, such assignments were void. Reed v. McIntyre, 98 U. S. 509; Boese v. King, supra. If the state law under which this assignment was made was in full force and effect, then, for the purpose of conveyance and administration under such law, the assignment might be treated as only voidable. But, congress having enacted a law which suspends the operation of that and every other state insolvent act, it follows that for the purpose of enforcing the federal statute, and as against proceedings thereunder, all such assignments must be held to be void. In Ex parte Lange, 18 Wall. 163, the supreme court, in dealing with the question of void and voidable instruments, says:

"The distinction between void and merely voidable judgments are very nice, and they may fall under the one class or the other as they are regarded for different purposes."

For the purpose of enforcing the national bankrupt act, which is the duty of this court, the assignment can only be considered as void. As the supreme court said in Mayer v. Hellman, supra, after announcing the object of the bankrupt act:

"For that purpose it sets aside all transactions, had within a prescribed period previous to the petition in bankruptcy, defeating or tending to defeat such distribution. It reaches to proceedings of every form and kind undertaken or executed within that period, by which a preference can be secured to one creditor over another, or the purpose of the act evaded."

If the assignment in question is not to be considered void, then the purpose of the federal act is not only evaded, but thwarted, since the assignment expressly provides for the administration of the estate in a manner which directly conflicts with the national bankrupt act. After the 1st day of July, 1898, proceedings in state courts under state insolvent laws are, as against proceedings under the national bankrupt act, coram non judice. Such proceedings have no validity,— no more than have proceedings in a state court when once a cause has been properly removed therefrom into a federal court. Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. 58; Crehore v. Railway Co., 131 U. S. 240, 9 Sup. Ct. 692.

Coming now to the question of estoppel: After having induced the petitioner Caruthers to go into the Morgan county court on the express promise of furnishing him with a certain bond, which they failed to keep, these debtors are not now in a position to invoke the doctrine of estoppel, which has its basis in equity. From the testimony of Caruthers' counsel in that proceeding, who was a witness produced at the hearing of this case by the debtors, it is reasonably clear from the evidence that Caruthers would never have joined in that petition, if he had not been promised a certain indemnity bond. To permit his acts in this matter, which were predicated on a promise never performed, to be now set up against him as an estoppel, by the very parties who failed to carry out the promise, would do violence to equity. The other acts of estoppel relied on are the filing by the petitioners of their claims with the assignee. This was in response to the notice sent out by the assignee pursuant to the Illinois statute, which provides that all creditors who do not file their claims within three

months shall not participate in the dividends until all other creditors are paid in full. Under such circumstances the filing of their claims with the assignee was quite natural. But these acts of the petitioners in no manner induced the debtors to make the assignment, nor did it induce them to take any step they would not have taken if the petitioners had not so filed their claims. It is true, the assignee filed these claims in the county court, and procured an order to be entered approving them; yet this was done long after the petitioners had instituted their proceedings herein in bankruptcy, and without their knowledge or assent. So far as the record in this case discloses, the petitioners have taken no actual or substantial benefits under the general assignment. On the contrary, they moved in this court on the very first day possible, and therein expressly disaffirmed the unlawful contract, which they had a right to do. Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 61, 11 Sup. Ct. 478. There were no fruits from the proceedings in the state court. There was no judgment, and the petitioners had a right to withdraw or disaffirm at any time before judgment for the purpose of lawful proceedings under the bankrupt act.

But, even if the acts proved were sufficient in fact to constitute an estoppel, I am of the opinion that, as a matter of law, no estoppel could arise in this case. The Morgan county court being without jurisdiction, all proceedings had therein were void. The contract of assignment, being contrary to the spirit of the bankrupt act, and against public policy, as manifested thereby, is also void, as against proceedings herein. If the estoppel sought to be applied is estoppel in record, the first requisite is that the court in which such record was made must have had jurisdiction. If it be estoppel by deed, the instrument must be valid. In the 3d Edition of Bigelow on Estoppel (page 286), it is said:

"It is an essential element of an estoppel by deed that the deed itself should be a valid instrument. A void instrument, though under seal, does not work an estoppel."

The most vital essential of a valid contract is that the object be legal. When a contract is made, the object of which is to distribute an estate in a manner contrary to that provided by the federal law, the object of that contract is illegal. It is an attempt on the part of the makers to defy the paramount law of the land. It could not be ratified, assented to, or affirmed, because it could not have been authorized by either party. In Central Transp. Co. v. Pullman's Palace-Car Co., supra, it is said:

"The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

And upon the question of estoppel the court, in the same case, says:

"But, when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped, by assenting to it, to show that it was prohibited by those laws."

Again, in Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, the court has used this language:

"All parties are equally bound to know the law, and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so; nor can it work an estoppel upon the county to claim the protection of the law."

In Durkee v. People, 155 Ill. 367, 40 N. E. 630, the supreme court of this state says that:

"A contract void as against a statute cannot become operative and valid through an estoppel. \* \* \* And it would be absurd to say that either persons or corporations can abrogate such a statute, upon the theory of an estoppel, by simply contracting to do the prohibited act."

To the same effect are the decisions of Koch v. Association, 137 Ill. 497, 27 N. E. 530; Cook Co. v. City of Chicago, 158 Ill. 530, 42 N. E. 67; Whitlock v. McClusky, 91 Ill. 582; Scovill v. Thayer, 105 U. S. 143; Special Drainage Dist. Com'rs v. People, 138 Ill. 96, 27 N. E. 857; Wright v. De Groff, 14 Mich. 164; Mason v. Mason, 140 Mass. 63, 3 N. E. 19; Spare v. Insurance Co., 15 Fed. 707; Greenh. on Pub. Pol. rule cxxvi., p. 115. A most satisfactory reason for this principle is to be found in Re Comstock, 3 Sawy. 218, Fed. Cas. No. 3,078, where it is said:

"The reason of the rule is apparent and satisfactory. The maintenance of the public policy of a state, as manifested by its legislation, is of much more importance than the real or supposed equities of the parties to an illegal transaction, and therefore they are not estopped to show such illegality for the purpose of preventing an enforcement of a contract in opposition to such policy. Otherwise the public law and policy would be at the mercy of individual interests and caprice."

To carry the doctrine of estoppel to the extent contended for in this case would be, in effect, to abrogate the national bankrupt act, and to revive and render operative state insolvency laws intended thereby to be suspended. So it is the opinion of this court that the enforcement of the national bankrupt act, the design and object of which are that "the property of insolvents shall be secured to their creditors in the very mode pointed out thereby, with all the facilities for its appropriation, all the security for its administration, all the safeguards against fraud, all its protection against devices to establish false claims, fictitious debts, and illegal or inequitable preferences, which that act provides," is of greater public moment than the supposed equities of the debtors in this case growing out of an estoppel based on a contract in violation of that act.

Entertaining these views, it is perhaps unnecessary to comment upon the failure of the assignee, Reagel, to take possession of the individual property of the debtors, in the face of the fact that it is apparent the partnership property is totally insufficient to pay the debts, nor upon other suspicious circumstances hinting strongly at unlawful preferences, which, if well founded, would be further justification, if any is needed, of the course of the petitioners in seeking the protection of the national bankrupt act, and praying an administration in accordance with its provisions. Under the pleadings and evidence in this case, I am of the opinion the petitioners are entitled to an adjudication as prayed for against the debtors.