In re SALMON & SALMON.

(District Court, W. D. Missouri, W. D.    January 19, 1906.)

No. 1,086.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—ASSIGNMENTS FOR BENEFIT OF CREDITORS.

A private bank owned by a partnership became insolvent, and its affairs were taken charge of by the Secretary of State of Missouri, through a special agent as authorized by Rev. St. Mo. 1899, § 1305, which provides for the administration of the property of insolvent banks by such special agent and by a receiver to be appointed later at suit of the Attorney General. After the bank property had been delivered to the special agent, the partners, who were also insolvent, executed conveyances to him of all their remaining nonexempt property, both partnership and individual, with power to sell and apply to the payment of the partnership debts. *Held,* that the transactions together constituted a general assignment for the benefit of creditors and an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422] as amended in 1903 (Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683]).

2. SAME—CONVEYANCE WITH INTENT TO HINDER AND DELAY CREDITORS.

A conveyance by an insolvent of all of his nonexempt property in trust for the benefit of his creditors, although without preferences, is one made with intent to hinder and delay his creditors, since that is its necessary effect and constitutes an act of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 3a (1), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422].

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 80.]

3. SAME—SUSPENSION OF STATE INSOLVENCY LAW—MISSOURI STATUTE FOR LIQUIDATING BANKS.

Rev. St. Mo. 1899, §§ 1305, 1306, enacted in 1897, make it the duty of the Secretary of State to take charge of any bank, the capital of which has become impaired, examine into its condition, and, if found insolvent, to report such fact to the Attorney General, who is then required to institute suit for the appointment of a receiver and the winding up of its affairs for the benefit of its depositors, creditors, and stockholders. They also prohibit a bank from making a general assignment or transferring any of its property after insolvency, and require it at once, on finding itself in a failing condition, to place its affairs in the hands of the Secretary of State to be wound up as therein provided. *Held,* that such statute is in legal effect an insolvency law, and, in respect to private banks owned by individuals or partnerships subject to bankruptcy proceedings, its operation was suspended by the enactment of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], and that participation by creditors in proceedings instituted thereunder did not estop such creditors from thereafter prosecuting proceedings in bankruptcy against the debtors.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 8, 9.]

4. SAME—PETITIONING CREDITORS—ESTOPPEL.

Creditors of an insolvent partnership or its members are not estopped to maintain proceedings to have the debtors adjudged involuntary bankrupts, because of filing and proving their claims in a suit in a state court under a state statute, for winding up the affairs of a bank owned by the partnership, instituted after the filing of the petition in

bankruptcy, where the alleged act of bankruptcy was a conveyance of property not employed in the banking business, nor involved in the state suit.

In Bankruptcy. On involuntary petition.

Karnes, New & Krauthoff and C. I. Davis, for petitioning creditors.
Johnson & Lucas, for bankrupts.
Mann & Daniel and H. H. McCluer, for objecting creditors.

POLLOCK, District Judge. This is an application by the requisite number of creditors owning claims aggregating the required amount for an adjudication in bankruptcy against Geo. Y. Salmon and Harvey W. Salmon, as partners doing a private banking business at the city of Clinton, in this state, and also against said persons in their individual capacities.

The acts of insolvency charged in the petition, of which complaint is now made under stipulation of the parties filed herein, are matters of public record and consist:

First, of a trust conveyance made by the partners of all their partnership property, except that employed in connection with their bank, to Robert M. Cook, trustee, on the 21st day of June, 1905, which conveyance reads:

"This conveyance in trust made and entered into this 21st day of June, 1905, by and between George Y. Salmon and Harvey W. Salmon both of Clinton, Henry county, Missouri, as copartners as to all matters excepting herefrom the copartnership of Salmon & Salmon in the banking business, as parties of the first part, and Robert M. Cook of the city of Jefferson, county of Cole and state of Missouri, trustee, as party of the second part, witnesseth: "That whereas, the banking house of Salmon & Salmon located at Clinton, Henry county, Missouri, has failed, and in pursuance of the statutes governing said matter John E. Swanger, Secretary of State, has taken possession of the assets of the said copartnership and of the said bank and has appointed the said Robert M. Cook as special agent to take charge of the affairs of said bank temporarily until a receiver has been appointed, and said Robert M. Cook under said appointment has taken charge of the affairs of said bank temporarily until a receiver has been appointed; whereas, the above named parties of the first part, are desirous of conveying to the said second party in trust all of the partnership assets they may hold in addition to the assets of the said bank already in charge of said receiver, in order that all the copartnership property of said first parties, whether in the banking business or any other business wherever same be located and situated may be applied to the payment of the indebtedness of the said Salmon & Salmon, copartners:

"Now, therefore, in consideration of the premises and for the purpose aforesaid, the said first parties do hereby convey to the said Robert M. Cook in trust all and singular the property of the first parties as copartners in addition to the assets of the said copartnership as a banking firm both real, personal and mixed wherever the same may be situated. . To have and to hold in fee simple and in trust for the purpose aforesaid, and said first parties further hereby authorize and empower the said Robert M. Cook to sell and dispose of in fee simple any and all of the lands owned by them, to convey in any other way any of the property herein intended to be conveyed to the said Robert M. Cook for the purpose mentioned in this conveyance as fully as the said parties of the first part themselves might do by direct deed including the power and authority to said Robert M. Cook to sell and convey all or any of said property by particular description or to transfer or deliver same to a receiver hereafter to be appointed."

Second, a like trust conveyance made at the same time, to the same party, of all the individual nonexempt property of Geo. Y. Salmon, made by Geo. Y. Salmon and Eugenia M. Salmon, his wife, which reads as follows:

"This conveyance in trust made and entered into this 21st day of June, 1905, by and between George Y. Salmon and Eugenia M. Salmon, his wife, of the city of Clinton, county of Henry and state of Missouri, as parties of the first part, and Robert M. Cook of the city of Jefferson, county of Cole and state of Missouri, trustee, as party of the second part, witnesseth: That whereas, the banking house of Salmon & Salmon, a copartnership consisting of George Y. Salmon and Harvey W. Salmon located at Clinton, Henry county, Missouri, has failed, and, in pursuance of the statutes governing said matters, John E. Swanger, Secretary of State, has taken possession of the assets of said copartnership and of said bank and has appointed the said Robert M. Cook as special agent to take charge of the affairs of said bank temporarily until a receiver has been appointed, and said Robert M. Cook under said appointment has taken charge of the affairs of said bank temporarily until a receiver has been appointed; and whereas, the above-named party of the first part is individually liable for all of the demands against said copartnership of Salmon & Salmon; and whereas, said first party is seised and possessed of individual assets and is desirous of conveying the same to the said second party in trust for the payment of the demands against the said Salmon & Salmon, copartners:

"Now, therefore, in consideration of the premises and for the purposes aforesaid, the said party of the first part does hereby convey to the said Robert M. Cook in trust all and singular the property of the first party, real, personal and mixed wherever it may be situated, reserving to himself all property exempt from execution and attachment. To have and to hold in fee simple and in trust for the purposes aforesaid, and said first party hereby further authorizes and empowers said Robert M. Cook to sell and dispose of in fee simple any and all of the lands owned by him and to convey in any other way by good and sufficient deed or other conveyance any of the property herein intended to be conveyed to the said Robert M. Cook for the purposes mentioned in this conveyance as fully as the said party of the first part might himself do by direct deed, with full description of any and all said land or other assets by him owned.

"The said first party further empowers and authorizes the said second party by deed of conveyance duly executed with particular description of said real estate or by any other conveyance of other property to transfer, deliver and convey said property to any receiver appointed by the circuit court having jurisdiction of the said estate of Salmon & Salmon."

Third, a like trust conveyance, made at the same time, to the same party, of all the nonexempt property of Harvey W. Salmon, a single man, which conveyance reads as follows:

"This conveyance in trust made and entered into this 21st day of June, 1905, by and between Harvey W. Salmon of the city of Clinton, county of Henry and state of Missouri, as party of the first part, and Robert M. Cook of the city of Jefferson, county of Cole and state of Missouri, trustee, as party of the second part, witnesseth: That whereas, the banking house of Salmon & Salmon, a copartnership consisting of George Y. Salmon and Harvey W. Salmon, located at Clinton, Henry county, Missouri, has failed, and in pursuance of the statutes governing such matters John E. Swanger, Secretary of State, has taken possession of the assets of said copartnership and of said bank and has appointed the said Robert M. Cook as special agent to take charge of the affairs of said bank temporarily until a receiver has been appointed and said Robert M. Cook under said appointment has taken charge of said bank temporarily until a receiver has been appointed; and whereas, the above-named party of the first part is individually liable

for all the demands against the said copartnership of Salmon & Salmon; and whereas, said first party is siesed and possessed of individual assets, and is desirous of conveying the same to the said second party in trust for the payment of the demands against the said Salmon & Salmon, copartners:

"Now, therefore, in consideration of the premises and for the purpose aforesaid, the said party of the first part does hereby convey to the said Robert M. Cook in trust all and singular the property of the first party, real, personal and mixed wherever it may be situated, reserving to himself all property exempt from executions and attachment. To have and to hold in fee simple and in trust for the purposes aforesaid, and said first party further hereby authorizes and empowers the said Robert M. Cook to sell and dispose of in fee simple any and all of the land owned by him and to convey in any other way by good and sufficient deed or other conveyance any of the property herein intended to be conveyed to said Robert M. Cook for the purposes mentioned in this conveyance, as fully as the said party of the first part might himself do by direct deed with full description of any and all said lands or other assets by him owned.

"The said first party further empowers and authorizes the said second party by deed of conveyance duly executed with particular description of said real estate or by any other conveyance of other property to transfer, deliver, and convey such property to any receiver appointed by the circuit court having jurisdiction of the said estate of the said Salmon & Salmon."

These trust conveyances were duly acknowledged the day they were made, and on the same day filed and recorded in the appropriate public office. As shown on the face of these conveyances, they were made at a time when the private bank owned and managed by the firm as partners had failed, and was in possession of the Secretary of State, through Robert M. Cook, as his agent, in pursuance of section 1305, Rev. St. Mo. 1899, which, in so far as material, reads:

"The Secretary of State may appoint a special agent to take charge of the affairs of an insolvent bank temporarily, until a receiver is appointed; such agent to qualify, give bond and receive compensation the same as a regularly appointed bank examiner; such compensation to be paid by such bank, or allowed by the court, as costs in case of the appointment of a receiver; provided, that in no case shall any bank continue in charge of such special agent for a longer period than sixty days."

As gathered from matters in evidence before me, I find at the time the above trust conveyances were made the partnership and the individual members thereof were hopelessly insolvent. The acts of bankruptcy charged in the petition filed in this case are: First, that these conveyances constitute a general assignment for the benefit of creditors; second, that the above conveyances were made with the intent to hinder, delay, or defraud the creditors of the grantors.

The first question arising for consideration on this record is: Did the act of making the above conveyances, in and of itself, as a matter of law, constitute an act or acts of bankruptcy? This question, I think, must be answered in the affirmative. As the bank itself, at the time the conveyances were made, had failed, was insolvent, and was in the possession of the grantee in the conveyances for the purpose of protecting and paying the depositors, and as this possession had been transferred by the grantors in these conveyances, under the law, because of the insolvency of the bank, and as the conveyances are absolute in form, covering all of the property of the debtors not exempt and not theretofore transferred by delivery to the

grantee in the conveyances in pursuance of law, and as they are made in trust for the purpose of making payment of the debts of the grantors, they operated in law as a general assignment for the benefit of creditors. That is to say, under the provisions of section 1306, Rev. St. Mo. 1899, a voluntary assignment of the property of the bank by the debtors being prohibited, for this reason it was not included in the conveyances made, but was transferred by delivery to the Secretary of State, under the law, therefore these separate conveyances, being of all the nonexempt property of the debtors susceptible of voluntary assignment, and of all the property not theretofore transferred, constitute in law one transaction, the legal effect of which is a general assignment for the benefit of creditors. White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309, 32 L. Ed. 677; Preston v. Spaulding, 120 Ill. 208, 10 N. E. 903; Hargadine v. Henderson, 97 Mo. 384, 11 S. W. 218; Belt v. Robinson, 63 Fed. 90, 11 C. C. A. 39; Mills v. Williams, 31 Mo. App. 447.

While I am clearly of the opinion, from matters in evidence before me, both the partnership and the individuals composing it were hopelessly insolvent at the time the conveyances were made, yet, if this were not shown, such general assignment would, irrespective of the insolvency of the grantors at the time it was made, constitute an act of bankruptcy. West Company v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814.

Again, although the conveyances in question were undoubtedly made in good faith for the purpose of paying pro rata the debts of the makers, without preference other than the laws of the state provided, and although they might not be avoided at common law for any fraud inhering therein, yet, as the making of these conveyances, taken in connection with the transfer of all the property of the bank theretofore made, must inevitably result in hindering and delaying the creditors of the grantors in the collection of their debts, and as the grantors in the making of these conveyances must be presumed to have intended the natural and probable effect of their act, it must be held, as a matter of law, the makers intended thereby to hinder and delay their creditors, and the making thereof constitutes an act of bankruptcy.

In Rumsey & Sikemier Co. v. Novelty & Machine Mfg. Co. (D. C.) 99 Fed. 699, it is said:

"The next question is whether the deed is a conveyance by the company with intent to hinder, delay, and defraud its creditors, or any of them. It is contended that because it devoted all the debtor's property to the payment of its creditors demands, pro rata and equally, and because there is no fraud of the kind requisite to avoid deeds at common law, or under the statutes of fraudulent conveyances, therefore this deed does not hinder, delay, or defraud creditors, within the meaning of the bankruptcy act. In considering this question, it must be borne in mind that the bankruptcy act confers certain peculiar rights and privileges upon creditors which were unknown to the common law, and unrecognized by state statutes concerning fraudulent conveyances. Among these are the right (1) to choose their own trustee, (2) to examine the bankrupt, (3) to have notice of all the important steps in the administration of the estate, and (4) to have the as-

sets converted into money and distributed under the supervision and control of a court of bankruptcy. Any course of procedure by an insolvent, like that resorted to in this case, whereby he conveys all his property to some trustee of his own selection, with power to dispose of it according to his own judgment, and with none of the safeguards provided by the bankruptcy act, clearly deprives the creditors of the valuable rights accorded to them by that act. In addition to this, if such a course of procedure is open to an insolvent, he may in all cases resort to it in anticipation of bankruptcy, and thereby altogether defeat the operation of the involuntary provisions of the act. Considerations like these lead me to the conclusion that such a course of procedure, even though invulnerable at common law and unattended with fraud in fact, inevitably operates to hinder, delay, and defraud the creditors with respect to their rights under the bankruptcy act. The rights above enumerated are taken from them, and they are deprived of all safeguards, in their effort to secure from the wreck of business some part of what is justly due them. Such being the necessary consequences of the act of the insolvent in making a voluntary conveyance of his property for the benefit of his creditors, it follows that he must have intended such consequences in making such a conveyance."

In re Gutwillig, 92 Fed. 337, 34 C. C. A. 377, it is said:

"We entertain no doubt that a voluntary general assignment, with or without preferences, made by an insolvent debtor within the prescribed four months, is fraudulent, and intended by him to "hinder, delay and defraud" creditors, within the meaning of the section, because its necessary effect is to defeat the operation of the bankrupt act and the rights of the creditors to such an administration of the assets as that act is intended to provide. The reasons for this conclusion, and the authorities in support of it, are so fully and satisfactorily set forth in the opinion by Judge Brown in the court below that we do not deem it necessary to enlarge upon them. They are summarized in the following extract from his opinion. Since the time of George II, and even prior, the current of English adjudications, followed by our own, has been that a voluntary assignment of all his property by an insolvent debtor to an assignee of his own choosing, though without preferences, is itself an act of bankruptcy, a fraud upon the act, and hence a fraud upon creditors, as respects their rights in bankruptcy, and voidable at the trustee's option, even without an express provision to that effect in the statute." Barnes v. Rettew, 2 Fed. Cas. 868; Globe Ins. Co. v. Cleveland Ins. Co., 10 Fed. Cas. 488.

See also, Davis v. Bohle et al., 92 Fed. 325, 34 C. C. A. 372.

It follows, from what has been said, the possession of all the property of the firm employed in the banking business having been transferred at the time of the making of the conveyances in question to Robert M. Cook, in trust for the benefit of creditors of the bank, because, as will be seen, of the insolvency of the bank, and the conveyances in question being absolute in form, and including all the remainder of the partnership assets and all individual assets not exempt for the benefit of creditors, and the natural and inevitable result of the same being to hinder and delay the creditors of the grantors in the collection of their just debts, the making of such conveyances constitutes an act of bankruptcy, and the order adjudging them bankrupts, both as partners and in their individual capacities, must go, unless, as contended by certain objecting creditors, petitioners herein are, by their acts and conduct, estopped from demanding such adjudication.

The facts relied upon to work an estoppel against petitioners, as shown by the record, are as follows: The original petition in bank-

ruptcy was filed June 26, 1905, 9:35 in the morning. On the same day about 11 o'clock, a. m., a proceeding was instituted in the circuit court of Henry county by the Attorney General of the state against the banking firm, in pursuance of authority conferred by section 1305, Rev. St. Mo. 1899, which, as above seen, makes provision for the Secretary of State taking charge of a bank, the capital of which is impaired, and also makes provisions for an examination of the bank, defines insolvency, and makes it the duty of the Attorney General to institute a suit in the proper court for the appointment of a receiver for the winding up of the affairs of the bank, if insolvent, for the benefit of the depositors, creditors, and stockholders in the bank; makes it the duty of the court, or judge thereof in vacation, to summarily appoint a receiver, etc., as follows:

"Upon taking charge of a bank the Secretary of State shall, as soon as is practicable, ascertain by a thorough examination into its affairs, its actual financial condition, and whenever he shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all its creditors, he shall report the fact of its insolvency to the Attorney General, who shall, immediately upon the receipt of such notice, institute proper proceedings in the proper court for the purpose of having a receiver appointed to take charge of such bank, and to wind up the affairs and business thereof, for the benefit of its depositors, creditors and stockholders; and it is made the duty of the court, or the judge thereof in vacation, summarily to appoint said receiver to take possession of the property, and assets of said bank, for the purpose of winding up the business thereof, any complaints or opposition of the bank or its officers subsequently to be heard in open court."

On the same day the proceeding was instituted a receiver was appointed who took charge of the bank and proceeded to wind up its affairs. On the 14th day of August thereafter the court appointed the receiver, one John B. Egger, referee, with directions to hear all claims presented against the trust estate and report his findings and the evidence thereon to the court at its next regular term for allowance, or disallowance. The petitioners in the present case, in pursuance of notice to them, presented their claims against the estate, which were allowed, and they surrendered the evidence of their claims and accepted certificates of allowance against the estate. It further appears the banking firm had transferred to the Fidelity Trust Company, of Kansas City, securities aggregating some $300,000, alleged to have been transferred more than four months before the filing of the petition in bankruptcy for the purpose of preferring the Kansas City State Bank as a creditor. In the proper exercise of his trust, it became necessary for the receiver to tender to the trust company the sum of $66,416.15 and bring suit to recover the securities transferred. Attorneys for petitioners, with the knowledge and consent of their clients, advised the making of this tender and the bringing of the suit by the receiver in the state court to recover the securities, and other suits which have been brought by the receiver.

It is further shown, under the advice of attorneys for petitioners, the receiver employed additional counsel in the suits brought by him and has incurred additional expense in the bringing of such suits and the employment of such additional counsel. It is therefore con-

tended by such acts and conduct petitioning creditors have elected to wind up the affairs of the trust in which they are interested in the proceeding brought by the Attorney General in the state court, in pursuance of the statute law above quoted, and are, and of right should be, by such acts and conduct, now estopped and debarred from further proceeding in this matter in this court, or now demanding an adjudication in bankruptcy for the acts of bankruptcy charged in the petition.

From an inspection of the record it is seen petitioners filed in this court an amended petition in bankruptcy on the 6th day of July, 1905. On the 11th day of September, thereafter, application was made to this court by petitioners for an order restraining creditors of the bankrupt estate from prosecuting actions against the receiver in the state court, and also, on the same day, application was made by petitioners for an order of this court restraining the receiver and his solicitors from applying any moneys in the hands of the receiver in payment of the compensation of such receiver, or his solicitors, or from making any application to the state court, fixing the amount of such compensation. These orders were granted by this court on the same day, as prayed. It further appears attorneys for petitioners have in all things, in so far as possible, under the peculiar circumstances of this case, diligently and earnestly pressed for a decision of their right to demand an adjudication of bankruptcy herein.

Under such state of facts, should petitioners be now held estopped and precluded from further prosecution of this proceeding by reason of their participation in the proceeding pending in the state court?

Petitioners deny the estoppel charged on two grounds: First, it is contended the state law under which the proceeding was instituted in the state court to wind up the affairs of the bank is in its nature and legal effect an insolvency law, and, in so far as the same applies to private banks its operation was suspended by the national bankrupt act, therefore, the proceeding in the state court is without authority of law, void, and works no estoppel. Second, that the acts relied upon as done by petitioners are not sufficient to work an election of remedy or an estoppel on the part of petitioners to contend the making of the conveyances in question constitute an act of bankruptcy.

The question first presented is the effect of the recognition by petitioners of the proceeding pending in the state court and their participation therein. The determination of this question of necessity depends largely upon the validity of such proceeding, for it is elementary, if such proceedings are unauthorized by the law, no participation therein by petitioners can work an estoppel. Bigelow on Estoppel (3d Ed.) 286; Bank of America v. Banks, 101 U. S. 240, 25 L. Ed. 850.

It can be neither disputed nor doubted but that the national bankruptcy act suspends the operations of all state insolvency laws over all cases coming within its scope and purview. Chief Justice Fuller, in delivering the opinion in the recent case In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, says:

"The operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive." Tua v. Carriere, 117 U. S. 201, 6 Sup. Ct. 565, 29 L. Ed. 855; In re Bruss-Ritter Co. (D. C.) 90 Fed. 651; In re Curtis (D. C.) 91 Fed. 737.

It is contended, however, by objecting creditors, that the Missouri statutes under which the proceeding was instituted in the state court is not such an insolvency law as is suspended in operation by the national bankrupt law, but that such act was passed and remains in force notwithstanding the national bankrupt act, under what is known as the reserve power or police power of the state for the purpose of exercising a visitorial supervision over the banking institutions of the state for the welfare of its citizens. The portion of the act now under consideration was passed in 1897, before the passage of the national bankrupt act, and is found in article 8, c. 12, Rev. St. Mo. 1899, under the head of "Banks and Banking." As has been seen from that part of section 1305 above quoted, after a bank has been taken in charge by the Secretary of State, and he has caused an examination and determination of its actual condition, and from such ascertainment he is satisfied "the bank cannot resume business, or cannot liquidate its indebtedness to the satisfaction of all its creditors," it then becomes his duty to report to the Attorney General of of the state, not the failure of the bank or the fact that he has taken the bank in charge, or the actual condition of the bank, but he is required by the terms of the act to report to the Attorney General the insolvency of the bank. The act then provides the duties of the Attorney General. That he shall institute a proceeding such as was instituted in the present case to wind up the affairs of the bank for the benefit of its depositors, creditors, and stockholders, and in winding up its affairs to make application to the proper state court, or judge thereof, to appoint a receiver; and the act further makes it the duty of such court, or judge thereof in vacation, when application is made, to summarily appoint a receiver to take charge of the affairs of the insolvent bank. Section 1306 prohibits any bank in the state from making a general assignment, and prohibits the transfer of any of its property of any kind or character after the commission of an act of insolvency, in the following terms:

"It shall be unlawful in this state for a bank or trust company to make a voluntary general assignment of its business and affairs. In case it shall find itself to be in a failing condition it shall immediately place itself in the hands of the Secretary of State. Any deed of voluntary general assignment executed by any such bank, individual banker or trust company shall be null and void, and in case the officers or directors of any such institution shall endeavor to make any voluntary general assignment of its assets the Secretary of State shall immediately take possession thereof and proceed as heretofore provided in the case of insolvent banks in this state for the appointment of a receiver by the court. All transfers of the notes, bonds, bills of exchange, or other evidence of debt owing to any bank or trust company, or of deposits to its credit; all assignment of mortgages, securities on real estate, or of judgments or decrees in its favor; all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders

or creditors; and all payments of money to it, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, shall be utterly null and void. No attachment, injunction or execution shall be issued against such bank or trust company or its property before final judgment in any suit, action or proceeding in any state, county or municipal court."

Undoubtedly it was within the exclusive province of the Legislature of the state to provide the manner of establishing and managing banks of the state, to define their character, and limit the duration of their existence; also, for the welfare of the state, to provide for the visitation and examination of such banks, to require the business of such banks at all times to be so conducted as to render safe and secure the depositors in, and the creditors of, the bank; for such purpose, to define what condition of the bank's affairs constitutes insolvency and through an officer or agent of the state to take charge of the bank and its affairs for the protection of its depositors and creditors, all under the reserved or police power of the state. It was also the province of the Legislature, in so far as state corporate banks are concerned, to provide the exclusive manner designated in the act in question to wind up the affairs of such banks, dispose of its assets, and distribute the proceeds to the creditors justly entitled thereto, because such banks are not within the scope or purview of the national bankrupt act.

But the question here is, can the special judicial proceeding provided for in the act in question, for the winding up of the affairs of a banking concern, be given operation and effect as to private banks which are expressly within the scope and jurisdiction of the national bankrupt act, and is such power reserved in the state? I think not. The federal Constitution, and the acts of Congress passed in pursuance thereof, are the supreme law of the land, binding upon all courts and the Legislatures of the several states. It was the evident intent of the state Legislature, judging from the portions of the act above quoted, to make the manner of conserving, controlling, managing, and distributing the assets of insolvent banks of the state exclusive, and to brook neither divided possession, control, or power of disposition by the debtor after insolvency, nor joint or concurrent jurisdiction or power over its assets after insolvency by any court or tribunal save the one therein provided. This, in the absence of action on the part of Congress, under the federal Constitution, it might do. The object to be attained by the proceeding in the state court is the ascertainment of the claims against the estate, conservation and disposition of its assets, and the distribution of the proceeds to all the depositors and creditors as they may be found entitled by the special state tribunal designated in the act for such purpose. In thus far the object sought to be accomplished and the end attained by the proceeding in the state court, under the act in question, is the same in effect as that sought to be attained in the bankruptcy court under the national bankrupt act. True, the state act does not provide for a discharge of the insolvent debtor or debtors owning the bank upon the surrender and application of all

nonexempt property to the payment of the debts of the bank, but the absence of such provision from the state act is not thought to control or determine its character as an insolvency law, for, if the act contained 'an express provision for discharge, it would be void as to pre-existing creditors not participating in the proceeding. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; Farmers' & Mechanics' Bank v. Smith, 6 Wheat. 131, 5 L. Ed. 224; McMillan v. McNeill, 4 Wheat. 209, 4 L. Ed. 552; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606.

Again, to render a state insolvency law inoperative because in contravention of the federal bankrupt act, it is not essential that the state act shall contain a provision for the discharge of the debtor. It is rather thought such provision for discharge is an incident to, but not an essential part of, such law. In re F. A. Hall Co. (D. C.) 121 Fed. 992; In re Curtis (D. C.) 91 Fed. 737; In re Marshall Paper Co., 102 Fed. 872, 43 C. C. A. 38; In re Reynolds, Fed. Cas. No. 11,723.

I am of the opinion, from a consideration of the act, that, in so far as it provides an exclusive proceeding in the state court at the suit of the Attorney General for the appointment of a receiver of an insolvent bank, the disposition of its assets, and the distribution of the proceeds among the depositors and creditors, it is in its nature and legal effect an insolvency law, and, in so far as applied to the private bank in question, its operation was suspended by the passage of the national bankrupt act. Sturges v. Crowninshield, supra; In re Reynolds, supra; In re Curtis, supra; In re F. A. Hall Co., supra; In re Sievers (D. C.) 91 Fed. 366; Davis v. Bohle, supra; In re Bruss-Ritter Co., supra; In re Smith (D. C.) 92 Fed. 135; In re Anderson (D. C.) 110 Fed. 141; Carling v. Seymour Lumber Co., 113 Fed. 483, 51 C. C. A. 1; In re Storck Lumber Co. (D. C.) 114 Fed. 360; Ex parte Eames, Fed. Cas. No. 4,237; Thornhill et al. v. Bank of Louisiana, Fed. Cas. No. 13,990; Gilman v. Lockwood, 4 Wall. 409, 18 L. Ed. 432; Lyman v. Bond, 130 Mass. 291; Griswold v. Pratt, 9 Metc. (Mass.) 16.

It follows, of necessity, in my opinion, petitioners are not estopped to demand an adjudication herein because of their participation in, or their acts and conduct in relation to, the proceeding pending in the state court to wind up the affairs of the bank.

Again, if for any reason, or upon any ground, the position assumed should be untenable, I am of the opinion the acts and conduct of petitioners relied upon by objecting creditors to work an estoppel in this case are insufficient to that end. Laying out of consideration, for the purpose of the argument, the fact that this proceeding was brought in point of time prior to the institution of the proceeding in the state court by the Attorney General, yet the acts of bankruptcy here complained of are the voluntary making of the conveyances for the benefit of creditors. The proceeding instituted in the state court, in which the petitioners participated, is one relating not to the making of the conveyances in question, but to the affairs of the bank. By the express terms of the conveyances questioned the assets of the bank

were excluded therefrom because the statute law of the state under which the Secretary of State took possession of the bank and its assets prohibited the bankrupts from including such property in a general assignment. Hence, they were excluded from the conveyances made. In the event the estate shall be administered under the laws of the state, the assets of the bank will be administered in the proceeding now pending brought by the Attorney General in which the receiver was appointed, but the property passing by the conveyances challenged by this petition will be administered by the trustee therein named, under the laws of the state regulating voluntary assignments for the benefit of creditors.

It is neither shown, nor is it attempted to be shown, that petitioners in any way counseled, advised, participated in, or have been benefited by the making of the conveyances of which they now complain in this proceeding. It is only contended and shown they participated in the proceeding brought and conducted by the designated law officer of the state relating to affairs of the bank.

The cases relied upon by objecting creditors as authority for the estoppel claimed are Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337, and In re Romanow (D. C.) 92 Fed. 510. In the first of these cases the third point in the syllabus states the ground of the estoppel, as follows:

"Where a debtor makes a general assignment for the benefit of his creditors, and judicial proceedings are instituted to enforce and carry out the assignment, creditors, who, on being made parties to such proceedings, do not repudiate the assignment, nor begin proceedings in bankruptcy, but file their claims under the assignment, and participate in the administration of the estate, and suffer the assignee to sell the property and collect the proceeds, involving a delay of several months, and the incurring of costs and expenses, are estopped thereafter to file a petition in involuntary bankruptcy against the assignor, based solely on the ground of the assignment."

In the second case the second point in the syllabus states the ground of estoppel, as follows:

"Creditors, who have assented to a general assignment by their debtor, and voluntarily become parties thereto, cannot maintain a petition in involuntary bankruptcy against him, alleging such assignment as an act of bankruptcy."

In the present case petitioning creditors, on the same day and prior to the time of the institution of the proceedings in the state court, commenced this proceeding in bankruptcy in this court. As shown by the record, and as seen from the facts stated, frequent orders have been made and applied for in the case. Attorneys for petitioners have diligently and persistently sought to speed the proceeding. Upon notice served the claims of petitioners were presented to the referee appointed by the state court and their claims allowed. Such participation, however, can scarcely be regarded as voluntary under the facts of the case. It became the duty of the receiver, in the exercise of his trust, to bring proceedings against the fidelity trust company and others. I can only view the conduct of the petitioners in this case as a prudent exercise of their rights, in view of the proceeding in the state court in regard to the affairs of the bank, and not as an

election of remedies or as an estoppel to further prosecute this proceeding. Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128.

It follows, upon the record made in this case, a judgment of adjudication must go. It is so ordered. It is further ordered creditors who have heretofore petitioned for leave to intervene in this cause may so do upon compliance with the usual terms imposed by the court with regard to costs.