CANNER v. WEBSTER TAPPER CO. et al.

(Circuit Court of Appeals, First Circuit. March 11, 1909.)

No. 809.

1. BANKRUPTCY (§ 467*)—APPEAL—REVIEW—FINDINGS OF FACT.

Findings of fact, made by a referee in bankruptcy and confirmed by the District Judge, are to be accepted by an appellate court, unless clearly erroneous.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 467.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 76*)—INVOLUNTARY PROCEEDINGS—CREDITORS ENTITLED TO JOIN IN PETITION—ESTOPPEL.

The rule that creditors who assent to a general assignment by their debtor are in general estopped to join in a petition in bankruptcy against him does not apply where they are induced to do so by his fraud or misrepresentation, and in such case they may repudiate the assignment and allege it as an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 97; Dec. Dig. § 76.*]

3. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GENERAL ASSIGNMENT.

Under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1025), the making of a general assignment by a debtor constitutes an act of bankruptcy, although it is not valid for all purposes.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

Appeal from the District Court of the United States for the District of Massachusetts.

Elisha Greenhood, for appellant.

Harvey H. Pratt (John J. Neal and John J. Coady, on the brief), for appellees.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. On September 4, 1908, the Webster Tapper Company, the A. G. Crosby Company, and James Dempsey

filed an involuntary petition in bankruptcy against Louis Canner. The act of bankruptcy alleged was the making of a general assignment July 18, 1908. The petition (thus anticipating a probable defense) further alleged that the petitioners accepted the assignment by reason of the false and fraudulent representations made by Canner, viz.: (1) That Canner had, at the date of the assignment, book accounts to the value of $10,000; whereas, in fact, he had, on July 10th, attempted to convey these book accounts to Wolfman as security for the sum of $2,300, and had secreted the said $2,300, or that part of it which had come into his hands. (2) That Canner owned and was possessed in his own right, but in his wife's name, of certain real estate; whereas, in fact, the said real estate stood in the name of Mrs. Canner and of Mrs. Freedman, and the "real title" was in Canner and Jacob Freedman as copartners. (3) That Canner had not before been adjudicated a bankrupt; whereas, in fact, the true name of the said Louis Canner was Benjamin S. Canner, and under the latter name he had been adjudicated a bankrupt July 16, 1902, and was still undischarged. That the petitioners relied upon these statements, and that, had they known that any or all of Canner's said representations were false or fraudulent, they would not have assented to or signed the assignment.

In his answer, Canner denied the act of bankruptcy, and further alleged that the petitioners had become parties to the assignment and had agreed to accept thereunder their distributive shares of his property, and so had ceased to be his creditors, and that the petitioners, with his other creditors, had participated in the assets and proceeds of the business and in his property for more than six weeks. Canner further denied the false representations alleged in the petition.

The matter was referred to the referee under General Order 12 (89 Fed. vii, 32 C. C. A. xvi), and the referee reported that a meeting of certain creditors of Canner was held at the office of the Webster Tapper Company on July 18, 1908. At that meeting, Tapper produced a list of assets and liabilities which he had received from Canner. The assets were stated to be about $9,700; the liabilities, $10,406. The assets included Canner's book accounts, which were represented by him to be easily worth $7,000. These figures were read to the creditors, and an assignment in the usual form was executed by the bankrupt and by some of the creditors. "After some of the creditors had signed the assignment, it developed that these book accounts had been assigned to Wolfman, who then had possession of the books, for a loan of $2,300." The referee further found (1) that the creditors, or a majority of them, who assented to the assignment, were not at that time fully conversant with the claim of Wolfman; (2) that there was no equity in the real estate, as stated by Canner to Tapper, owing to the fact that a mortgage had recently been placed on it; (3) that Canner had misrepresented by giving the wrong name. The referee found "these allegations to be established by the evidence, and that the creditors were misled into entering into this assignment, and that they would not have entered into the assignment had they known the facts as they were subsequently ascertained." He therefore recommended an adjudication of bankruptcy.

The case came on for further hearing before the learned judge of the District Court, who adjudged Canner a bankrupt. In his opinion he stated that the referee had found that false representations were made by Canner to his creditors: (1) In respect of his name and his former adjudication in bankruptcy; (2) in respect of the Wolfman pledge; (3) in respect of the real estate. The learned judge added that the evidence supported the findings, and that Canner was attempting to keep his creditors in ignorance of the facts. He concluded as follows:

"An assent to an assignment induced by fraud on the bankrupt's part ought not to be treated as a voluntary assent on the creditors' part. Under the circumstances shown, I think these creditors had the right to repudiate their assent and treat Canner's execution of the assignment as an act of bankruptcy unassented to by them."

From the adjudication of bankruptcy Canner appealed to this court, assigning as errors that the court had erred in adjudicating him a bankrupt, and in holding (1) that the petitioning creditors were entitled to become parties to the petition after they, or some of them, had advised and joined in the making of the general assignment; (2) that the petitioning creditors could or did legally avoid the assignment; (3) that false representations were made; and (4) that the petitioners were deceived. The other assignments of error we do not feel ourselves called upon to notice.

We perceive no error in the findings of fact made by the referee and confirmed by the judge. These we are to accept, unless clear error in them is shown, according to a late statement of the rule in Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. ——, and Smith v. Nat. Suffolk Bank, 127 Fed. 286, 62 C. C. A. 218.

Canner urges, first, that the petitioning creditors, having become parties to the general assignment, are estopped from filing a petition in involuntary bankruptcy against the assignor; and, second, that, even if they be not thus generally estopped altogether from joining in a petition in involuntary bankruptcy, yet they are estopped from setting up in that petition, as the alleged act of bankruptcy upon which the petition is based, the general assignment whose effect upon them as parties they seek to avoid. Canner contends that the petitioning creditors are thus seeking, on the one hand, to avoid the assignment to which they were parties, and, on the other, that they are relying upon it as an act of bankruptcy.

1. That a creditor who has become a party to a general assignment may not ordinarily join as a petitioning creditor in bankruptcy proceedings is settled, as has been said by this court and by the District Court for the District of Massachusetts. Moulton v. Coburn, 131 Fed 203, 66 C. C. A. 90; In re Romanow (D. C.) 92 Fed. 510. But in the first-mentioned case this court placed its decision upon the ground that, the petitioning creditor "having voluntarily elected that the bankrupt's estate shall be administered under the assignment, and having accepted the provisions of the deed of trust, he is estopped from action inconsistent with the agreement. Lowell on Bankruptcy, § 51. While special circumstances might entitle a creditor to repudiate his

agreement or release him from the consequences, no such circumstances are present in this case." Where the petitioning creditor has become a party to the assignment, relying upon the false representations of his debtor, the general rule stated in Moulton v. Coburn and in Re Romanow does not apply, and the exception to the rule suggested in the former case has its proper application. The false representations thus relied upon need not be sufficient to form the basis of an action of deceit. The debtor who offers a general assignment to his creditors is bound to a fair disclosure of his circumstances without concealment or falsehood. Pollock on Contracts (7th Eng. Ed.) 282; Id. (Williston's Ed.) 381.

2. In Griffin v. Dutton (C. C. A.) 165 Fed. 626, 627, we held that· an assignment constitutes an act of bankruptcy, although it be not valid for all purposes; e. g., by reason of a want of the assent of creditors. We observed:

"The language of the bankruptcy act is general. It makes no distinction between strictly valid instruments and those which may be invalid for certain purposes. To limit its operation to those assignments which are in all respects valid would be contrary to the intent and purpose of the act."

In his opinion the learned judge of the District Court rested his decision upon a repudiation by the petitioning creditors of their assent to the assignment. This repudiation, which was permissible under the circumstances, left the assignment still executed by the debtor. Thus it remained a sufficient basis for an adjudication of bankruptcy, although it was not assented to by any creditor. With this reasoning we agree. Our decision is in accord with the decision of the Circuit Court of Appeals for the Seventh Circuit in Re Curtis, 94 Fed. 630, 36 C. C. A. 430. There, it is true, the petitioning creditor had not formally assented to the general assignment, except by filing his claim for a share in the assigned assets; but we do not regard as material the difference between that case and the case at bar, though the difference has sometimes been alluded to in comments made upon the former.

We therefore accept the facts as found by the learned District Judge and the referee. We agree with their interpretation put upon these facts and with their construction of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The decree of the District Court is affirmed, and the appellees recover their costs of appeal.

NOTE.—The following is the opinion of Dodge, District Judge, in the court below:

DODGE, District Judge. Louis Canner, the alleged bankrupt, is also known as Benjamin S. Canner. He has still another name under which he carries on a business wherein he is the sole person concerned, viz., the Marshall Hay & Grain Company.

The act of bankruptcy charged is a general assignment for the benefit of creditors on July 18, 1908. That he executed such a general assignment is not disputed. The document is in evidence as Exhibit 1. He is described in it as Benjamin S. Canner, doing business under the ·name and style of the Marshall Hay & Grain Company. Albert K. Tapper, who signs this petition on behalf of the Webster Tapper Company, one of the petitioning creditors, is the

assignee named. James Dempsey and the A. G. Crosby Company, the other two petitioning creditors, signed it as creditors assenting to it, as did also the Webster Tapper Company and five other parties. In the assignment the bankrupt is nowhere described as Louis Canner, nor is any reference made to that name.

A creditor who assents in writing to an assignment like this, and voluntarily becomes a party to it, as these creditors have done, is ordinarily estopped to allege it as an act of bankruptcy for the purposes of an involuntary petition against the assignor. This is the settled law, at least in this circuit. Re Romanow (D. C.) 92 Fed. 510; Moulton v. Coburn et al., 131 Fed. 201, 203, 66 C. C. A. 90, 92. As declared by the Circuit Court of Appeals for this circuit in the case last cited: "This is not because he has ceased to be a creditor, but because, having voluntarily elected that the bankrupt's estate shall be administered under the assignment, and having accepted the provisions of the deed of trust, he is thereby estopped from action inconsistent with the agreement." Page 203.

In the same opinion it is said, immediately after the quotation above made: "While special circumstances might entitle a creditor to repudiate his agreement or relieve him from the consequences of an election, no such circumstances are presented in this case." The question in the case at bar is whether or not such special circumstances are shown in it as ought to have the effect described.

In their involuntary petition, filed some six weeks after the assignment, viz., on September 4, 1908, the petitioners set forth that they were induced to assent to the assignment by certain false and fraudulent representations made to them by Canner. In his answer Canner denies making the false representations charged. He also denies the commission of the alleged act of bankruptcy or that he was insolvent. There is no doubt that he did execute the assignment; and, this being so, the question of his insolvency becomes irrelevant. West Company v. Lea, 174 U. S. 590, 599, 19 Sup. Ct. 836, 43 L. Ed. 1098.

Under a reference to ascertain and report upon the facts, the referee has found that false representations were made by the bankrupt to his creditors at a meeting of his creditors, during which, after a statement of assets and liabilities obtained from him had been presented, the assignment was executed and assented to as above. The false representations found by the referee may be thus stated; some particulars not appearing in his report being inserted from the evidence which accompanies it:

(1) The bankrupt gave his name only as Benjamin S. Canner, doing business as the Marshall Hay & Grain Company. But his real name, or at least his earlier name, is Louis Canner, the name under which, on July 16, 1902, he filed a voluntary petition in this court. On that petition he has never been discharged. In those proceedings he appears only as Louis Canner. At the time of the assignment he represented to the creditors present that he had never been in bankruptcy. They did not then know that his real name, or former name, was Louis Canner.

(2) He represented his book accounts as easily worth $7,000, and amounting, as they stood, to $10,000; whereas, he had in fact assigned them all to one Wolfman as security for a note for $2,600, which he had given for a loan of $2,300. He had also, as afterward appeared, put his books in Wolfman's possession, and Wolfman declined to give them up to the assignee.

(3) He represented as an item of his assets certain real estate standing in his wife's name, that there was an equity in this real estate worth $800, and that it would be conveyed to the assignee. In fact, the real estate stood in the joint names of his wife and another person, and there was no equity in it of substantial value; it having recently been mortgaged by the record owners.

The referee has further found that the creditors who assented to the assignment relied on and were misled by the above false representations, and would not have become parties to it, had they known the real facts.

The evidence seems to me to support the referee's findings. In my opinion it shows that Canner, in the discussion of his affairs which resulted in the execution of and assent to the assignment, was attempting to keep his creditors in ignorance of anything which might lead them to withhold the prospect of relief on easy terms which the proposed assignment afforded. If there is any

possible question whether some of the petitioning creditors ought not to have known or suspected that the facts regarding the book accounts or the real estate were not as represented, before they signed the assignment, I see no reason at all to doubt that the bankrupt deceived them all by his use of a name not his own, or at any rate differing from that under which he had passed in 1902, and by representing, contrary to the fact, that he had never been in bankruptcy.

An assent to an assignment induced by fraud on the bankrupt's part ought not to be treated as a voluntary assent or election on the creditor's part. Under the circumstances shown, I think these creditors had the right to repudiate their assent, and treat Canner's execution of the assignment as an act of bankruptcy unassented to by them. Re Curtis, 94 Fed. 630, 36 C. C. A. 430.

Adjudication is therefore ordered.