## In re FEDERAL LUMBER CO.

(District Court, D. Massachusetts.   February 17, 1910.)

### No. 15,235.

1. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GENERAL ASSIGNMENTS.
   To constitute an act of bankruptcy by a corporation under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), by general assignment for creditors, some corporate act purporting to transfer all the corporation's property must at least be shown.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*]

2. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GENERAL ASSIGNMENTS.
   As constituting an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), a general assignment for creditors may be made without a formal deed.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*]

3. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GENERAL ASSIGNMENTS.
   A general assignment for creditors is no less an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), because invalid for some other purposes.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*]

4. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GENERAL ASSIGNMENTS.
   Preparation of a deed of general assignment for creditors not signed nor out of escrow is not an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422).
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*]

5. BANKRUPTCY (§ 60*)—"ACT OF BANKRUPTCY"—GENERAL ASSIGNMENTS.
   A corporation's adoption of resolutions authorizing the treasurer to convert the corporate assets into cash to be deposited with a trust company for the creditors' benefit did not constitute an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as a general assignment for creditors, where the plan was not executed.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 60.*
   For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the Federal Lumber Company, bankrupt. On question of adjudication. Petition dismissed.

Jacobs & Jacobs, for petitioning creditors.

Hutchins & Wheeler and Lincoln Bryant, for alleged bankrupt.

DODGE, District Judge. The stockholders of this company held a meeting May 12, 1909, to the regularity of which no objection is raised. At that meeting they passed resolutions as follows:

"To accept the offer of the Lincoln Trust Company of the city of New York, to act as a depository for the creditors of the Federal Lumber Company free of charge, and that the said trust company in accepting said trust is hereby relieved of any responsibility for the accuracy or validity of the claims against the Federal Lumber Company, and it is hereby authorized to accept the list furnished by the treasurer of the said Federal Lumber Company, as being all the creditors, and to act upon said list without further responsibility or inquiry upon its part, it being understood that the said Lincoln Trust Company is acting solely as agent and trustee for the Federal Lumber Company and its creditors.

"That the treasurer of the Federal Lumber Company be and he hereby is authorized to convert into cash as speedily as possible all assets of the corporation, and to collect all accounts due the corporation, and to deposit the same, with all moneys received from the sale of the assets, in the said Lincoln Trust Company, to be held by said trust company in trust for the creditors of the Federal Lumber Company, the names of each creditor and the amount due each to be furnished to said trust company by the treasurer of the Federal Lumber Company; all moneys so deposited to immediately become the property of said creditors and to be distributed, pro rata among said creditors.

"The first distribution to be made when the said trust company shall have on hand 50 per cent. in cash; but in event of 50 per cent. not being available by September 1st, 1909, a distribution of all funds on hand must be made on that date.

"The second distribution to be made when an amount equal to 20 per cent. shall have accumulated; but in event of 20 per cent. not being available by December 1st, 1909, a distribution of all funds on hand must be made on that date, and subsequent distribution be made quarterly thereafter, until the full amount of claims with interest at 6 per cent. per annum, shall have been paid.

"That upon the final payment of all claims that the president call a meeting of the stockholders to vote upon a proposition for the dissolution of the corporation."

The offer made by the trust company and accepted by the resolutions was not in writing, and there is no direct evidence as to its terms.

Thereafter, in pursuance of arrangements made at interviews in New York between the treasurers of the two companies, notice was sent by the Lincoln Trust Company to all the Federal Lumber Company's creditors, according to a list of them furnished for the purpose by the Federal Lumber Company, inclosing a copy of the resolutions. Some, but not all, of the creditors thereupon filed claims with the Lincoln Trust Company. The treasurer of the Federal Lumber Company never made any deposit with the Lincoln Trust Company in accordance with the resolutions. He never attempted to make any until Friday, June 18, 1909. On that day he mailed to the Lincoln Trust Company a letter, inclosing a check for $300 to its order. The trust company returned the check with a letter dated Monday, June 21, 1909, in the terms following:

"We acknowledge your letter inclosing check to our order for $300 on account of collection of the assets of your company, and beg to advise you that we do not care to accept this deposit until all the creditors named to us have filed their claims with us.

"At the present time creditors numbering twenty-one, holding claims amounting to $12,639.92, have not expressed their willingness to assent to your proposition, and as we understood from you originally that this plan was formulated at the request of the holders of claims against you and that getting their assent was merely a matter of form, we feel that the amount of labor and risk to us involved in this matter so far outweighs any compensation that can arise to us from the use of the money, that we desire to resign as your agent in this matter. We will delay notifying the creditors to this effect as a matter of courtesy to you, until you have an opportunity of replying to this letter. We return check."

It is evident from the terms of this letter that the trust company's, offer, accepted by vote of May 12, 1909, had been an offer conditioned upon the assent of all the lumber company's creditors, and that there had not been any agreement on the part of the trust company to take over the lumber company's funds and the proceeds of its assets, when sold, upon trust for its creditors, whether those creditors agreed to the arrangement or not. The plan for the transfer of said funds and proceeds upon the terms set forth in the resolutions was abandoned and nothing further done in pursuance of it.

As a consequence, however, of further negotiations between the Lumber Company's treasurer and the trust company, it was later agreed that the lumber company, having converted all its assets into money, should ascertain the amount of each creditor's share and thereafter deposit with the trust company, in the name of each. creditor, the amount found due him, and that the trust company should on September 1st pay over and deliver to the creditors the amounts thus deposited in their respective names. The trust company sent letters to creditors, dated July 1, 1909, stating that it was informed:

"That the company proposes to deposit with us to your credit sums received from their collections from time to time to be payable to you on September 1, 1909, and we will on that day mail you our check for such amount so deposited."

The Lumber Company, however, never sent any money to the trust company, which on September 2, 1909, by a letter of that date, advised the Lumber Company that it was that day communicating with the various creditors—

"stating that as you have not lived up to your agreement with us, and, as no funds have been deposited with us for the account of the creditors, we have entirely severed our connection with you in this matter."

The lumber company at no time executed any instrument purporting to be an assignment of its property to the trust company. There never was any agreement between the two companies that the trust company should receive any compensation beyond the use of the money deposited, nor was there ever any agreement that the creditors should accept what might come to them from the trust company in full settlement of their claims.

The petitioning creditors contend that upon these facts, which are all the material facts proved, the lumber company must be held to have

committed the fourth act of bankruptcy described in section 3a (4) of the bankruptcy act, or, in other words, to have "made a general assignment for the benefit of its creditors." Act July 1, 1898, c. 541, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422). The referee has found that "this scheme or arrangement amounted to a general assignment for the benefit of creditors and constituted an act of bankruptcy."

The scheme or arrangement adopted by the stockholders' resolutions may have been such as would have amounted to a general assignment and constituted an act of bankruptcy if carried into effect, but, unless it can be said that by the vote and what was done in pursuance thereof a general assignment was "made," it cannot be said that an act of bankruptcy was committed. Voting to make a general assignment is not necessarily the same thing as making one. [1] Before it can be said that a corporation has made a general assignment, I think that some corporate act purporting to be a transfer of all the corporation's property must at least be shown.

[2] It is true that a general assignment may be made without a formal deed of assignment. Thus in Re C. H. Bennett Shoe Co. (D. C.) 140 Fed. 687, the stockholders of the corporation signed an agreement, and an appointment such as under the laws of Connecticut had the effect, and was understood by them to have the effect, of assigning its property to its directors, and making them trustees to wind up its affairs. Thus in Re Salmon (D. C.) 143 Fed. 395, part of the alleged bankrupts' property had been taken charge of by a state official, according to the provisions of certain state laws, for the benefit of all their creditors; and, the bankrupts having thereupon conveyed to the same official the remainder of their property for the benefit of all their creditors, it was held that the two transactions together amounted to a general assignment. And thus in Re Thomlinson Co., 154 Fed. 834, 83 C. C. A. 550, a bill of sale of all the bankrupt's property conditioned that the grantee should sell or convert it into money, pay all the creditors pro rata with the proceeds and return the surplus, if any, to the grantor, was held to amount to a general assignment. In all such cases, however, what was done was done with the intent that it should effect a present transfer of all the grantor's property.

[3] It is true also that if a grantor makes for the benefit of his creditors what purports to be and is intended by him to be a general assignment, and is accepted as such by the assignee named, this will be none the less an act of bankruptcy though invalid for some purposes. Re Meyer, 98 Fed. 976, 39 C. C. A. 368, and, under Act March 2, 1867, c. 176, 14 Stat. 517, Re Mendelsohn, 3 Sawy. 342, Fed. Cas. No. 9,420, Re Lawrence, 10 Ben. 4, Fed. Cas. No. 8,133. In Griffin v. Dutton; 165 Fed. 626, 91 C. C. A. 614, the Court of Appeals for this circuit held an assignment so made and accepted an act of bankruptcy, though neither the form in which the bankrupt had signed it nor the signature of the assignee could be proved with certainty, the instrument itself having been lost, and though no creditor had assented to it. In Canner v. Webster Tapper Co., 168 Fed. 519, 93 C. C. A. 541, the same court held such an assignment an act of bankruptcy, though the assenting creditors repudiated it and were held to have the right to re-

pudiate it because their assent had been induced by fraud and misrepresentation.

[4] But in all the above cases the grantor had gone far enough to make what had been done a transfer of all his property, so far as his part in the transaction was concerned. If he has stopped short of that point, however clearly he may have manifested his intention to make a general assignment, he cannot be said to have made any. He may have prepared a deed of assignment with intent to execute it, but, so long as he has left it unsigned or in escrow, the general assignment contemplated has not been made. Lowell, Bankruptcy, § 37. If a corporation has approved a deed of general assignment and authorized its execution by an officer, execution by him would seem to be necessary before it can be said that the assignment has been made. And if, as here, no deed is to be made, but an officer is authorized to make a future transfer of the property according to a plan approved, I do not think a general assignment can be said to have been made while all the property remains untransferred. In Re Hartwell Oil Mills (D. C.) 165 Fed. 155, the corporation's stockholders voted to authorize the directors to appoint a commission empowered to sell the property for cash, wherewith its debts were to be wound up and settled according to law, but it was held that no general assignment had been made. In like manner, where the question was as to the commission by a corporation of a different act of bankruptcy, it was held in Re Baker-Ricketson Co. (D. C.) 97 Fed. 490, that a vote authorizing an officer in case an involuntary petition against the corporation should be filed to appear and admit in writing its insolvency and its willingness to be adjudicated was not the making of such an admission by the corporation itself. See, also, to the same effect Re Southern Steel Co. (D. C.) 169 Fed. 702.

[5] The resolutions passed May 12, 1909, did not transfer any of this corporation's property. They were not intended and did not purport to have any such effect. After they were passed the corporation's property was as much its own as before they were passed. They did nothing more than to authorize the treasurer to make a future transfer upon certain terms after he had converted the property into money. They did not, as the facts show, bind the corporation to carry any transfer into effect.

The treasurer never made any transfer in pursuance of the resolutions. The $300 of the corporation's funds which he offered the trust company they were not bound to accept, and they refused to accept it. At to the plan for deposits with the trust company of separate amounts to the credit of each of its creditors, respectively, which was substituted for the plan described in the resolutions, if it would ever have been possible to say that such a plan amounted to a general assignment, this plan was abandoned before any steps were taken toward carrying it out.

If there was no transfer, there was neither a preferential nor a fraudulent transfer as alleged in the petition.

I am obliged to hold that the commission of the acts of bankruptcy relied on has not been proved, and that the petition must be dismissed.