UTZ & DUNN CO. et al. v. REGULATOR CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1914.)

No. 3936.

1. BANKRUPTCY (§ 76*)—INVOLUNTARY PROCEEDINGS—QUALIFICATION OF PE-
TITIONERS—ESTOPPEL.

Creditors who, after the making of a general assignment in good faith
by their debtor with knowledge of the facts, assented thereto, and assigned
their claims to the assignee, which sold the property and incurred ex-
pense on the faith of the assent of the creditors generally, were estopped
to join in a petition in bankruptcy against the debtor alleging the assign-
ment as the sole act of bankruptcy, and the estoppel extends to pur-
chasers of their claims who bought at the instance and with the money
of another creditor for the sole purpose of joining it in the petition to
make the required number.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 50, 56, 97,
99, 100; Dec. Dig. § 76.*]

2. JUDGES (§ 56*)—DISQUALIFICATION TO ACT—WAIVER—CONSENT OF PARTIES.

Judicial Code, § 20 (Act March 3, 1911, c. 231, 36 Stat. 1090 [U. S. Comp.
St. Supp. 1911, p. 133]), which requires a district judge when having any
interest in a cause, etc., "on application by either party" to take steps to
secure the assignment of another judge to hear the case, does not prohibit
a judge from acting nor declare his judicial action void merely because of
the existence of disqualifying ground, and where his interest in the mat-
ter to be determined is slight, and neither party objects, but both request
him to proceed to avoid delay, he may properly and legally do so.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 235–245; Dec.
Dig. § 56.*]

Appeal from the District Court of the United States for the Dis-
trict of Utah; John A. Marshall, Judge.

In the matter of the Regulator Company, alleged bankrupt, and
others. The Utz & Dunn Company and others, petitioning creditors,
appeal from an order dismissing their petition. Affirmed.

R. N. McConnell, of Los Angeles, Cal., for appellants.

Benner X. Smith, of Salt Lake City, Utah (Frank B. Stephens and
Robert B. Porter, both of Salt Lake City, Utah, on the brief), for ap-
pellees.

Before HOOK and CARLAND, Circuit Judges, and VAN VAL-
KENBURGH, District Judge.

HOOK, Circuit Judge. This is an appeal by petitioning creditors
from an order of the District Court refusing to adjudge the Regulator
Company, a mercantile corporation of Utah, a bankrupt. The sole
act of bankruptcy charged was that the bankrupt had made a general
assignment for the benefit of creditors. It was necessary that at least
three creditors petition for the adjudication. Section 59b, Bankruptcy
Act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p.
3445]). Three creditors petitioned, namely, the Utz & Dunn Com-
pany, W. F. Bland, and Ernest Chambers. Bland and Chambers were
not originally creditors, but were vendees of Worms & Loeb and the
Mitchem Mill Remnant Company to whom the bankrupt was indebted

in small sums. In order to secure the required number of petitioners, the attorney of Utz & Dunn Company bought their claims, caused them to be assigned to Bland and Chambers, who were his salaried employés, and charged the cost to their accounts on his books. At the trial of the petition the court held that the vendors Worms & Loeb and the Remnant Company had estopped themselves from questioning the assignment for the benefit of creditors and that the disability extended to their vendees, thus leaving but one qualified petitioning creditor.

[1] The assignment was made April 25, 1912, to the Utah Association of Credit Men for the equal, pro rata benefit of all creditors without preference or priority except as provided by law. The petition in bankruptcy was filed July 15, 1912. In the interval between the two instruments the circumstances occurred upon which the ruling of estoppel was based. When the assignment was made, the assignee at once took possession of the property, sent notices to the creditors outlining the policy of liquidation, and requested the creditors severally to assign their accounts to it. Worms & Loeb and the Remnant Company each responded by sending a statement of account and a written assignment of it to the Association of Credit Men containing authority to enforce payment and to settle, compromise or adjust at their pro rata share of expense. Other creditors did likewise. In the letters transmitting the accounts and assignments Worms & Loeb asked the assignee to protect their interests and the Remnant Company asked to be kept posted. On May 8, 1912, the assignee mailed to the creditors including the two just named a synopsis of an inventory of the property and a letter generally descriptive of it, and inviting proposals to purchase on the 18th. The attorney for Utz & Dunn Company which afterwards became the principal petitioner in bankruptcy went to Salt Lake, Utah, to attend the sale. His actions there were in harmony with the assignment and the plans of the assignee. He bid for the property both in writing and verbally, but all bids were rejected by the assignee. He then asked and obtained from the assignee an option for a fixed period to purchase the property at a specified price, and on May 24th, within the life of the option, he closed it by acceptance in writing. For some reason, which does not appear, the purchase was not consummated. The attorney claims that as regards his bids and the acceptance of the option he acted for himself personally and not for his client Utz & Dunn Company. He was shown a list of creditors and was advised that most of them, including Worms & Loeb and the Remnant Company, had already assigned their accounts to the assignee. The property was then sold to another purchaser for about $1,000 less than the sum fixed in the option. A committee of creditors acting in conjunction with the assignee approved the sale. About the time and after Worms & Loeb and the Remnant Company assigned their claims to the assignee, the latter incurred and paid costs and expenses of administering the trust amounting to about $1,000 including $600 paid to preserve an advantageous and valuable lease. The attorney for Utz & Dunn Company purchased the accounts of Worms & Loeb and the Remnant

Company July 9, 1912, and caused them to be assigned to his employés Bland and Chambers solely to qualify them as petitioners in the bankruptcy proceeding begun July 15th. No notice of this second assignment was given the assignee before the petition in bankruptcy was filed. The original assignment for the benefit of creditors was made in good faith, and there was no complaint of fraud or that the assignee was not administering its trust fairly, economically, and expeditiously. The expenses and trouble of the assignee would have been paid and incurred had not Worms & Loeb and the Remnant Company transferred their accounts to it; the assignee acted not in reliance on those transfers but upon a general consideration of the whole situation of which the transfers were a part. However, the two creditors joined the others in approving the assignment and their affirmative conduct, which was more than mere acquiescence, was an assurance to the assignee that they chose it to administer the estate in preference to a resort to proceedings in bankruptcy. We think the trial court was right in holding the two creditors precluded from setting up the assignment as an act of bankruptcy and that their disability extended to their subsequent vendees Bland and Chambers. The case is not one of mistake in choice of inconsistent remedies as in Bierce v. Hutchins, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828, and Nauman v. Bradshaw, 113 C. C. A. 274, 193 Fed. 350; but it is an attempt by two of a number of creditors to use a lawful act of their debtor which they had approved and confirmed with full knowledge of all the circumstances and in the carrying out of which they had joined, as the reason and ground for an antagonistic proceeding. Had the assignment been fraudulent, or had they been deceived or denied the opportunity of free choice, the case might be different. An assignment for the benefit of creditors is not void. It is not even voidable in the sense of an unauthorized or irregular act that may be ratified or a wrong that may be condoned. It is valid and effective until displaced by the superior force of proceedings under the act of Congress. Randolph v. Scruggs, 190 U. S. 533, 537, 23 Sup. Ct. 710, 712 (47 L. Ed. 1165):

"There is no objection to a debtor's distributing his property equally among his creditors of his own motion, if bankruptcy proceedings do not intervene."

Worms & Loeb and the Remnant Company should be held to their assent and participation in the assignment out of consideration for the other creditors who joined them in that course, the assignee who proceeded with the liquidation of the estate, and the purchaser at the assignee's sale. The rule of estoppel in such cases is well settled. In re Hanyan, 104 C. C. A. 667, 181 Fed. 1021; s. c. (D. C.) 180 Fed. 498; Stroheim v. Perry & Whitney Co., 99 C. C. A. 68, 175 Fed. 52; Canner v. Webster Tapper·Co., 93 C. C. A. 541, 168 Fed. 519; Moulton v. Coburn, 66 C. C. A. 90, 131 Fed. 201; Clark v. Henne & Meyer, 62 C. C. A. 172, 127 Fed. 288; Simonson v. Sinsheimer, 37 C. C. A. 337, 95 Fed. 948; In re Romanow (D. C.) 92 Fed. 510.

[2] The assignee for the benefit of creditors intervened and joined the bankrupt in resisting the petition in bankruptcy. During the trial the assignee proposed to prove some claims which had been assigned

to it by creditors, and it was then brought to the attention of the district judge that a certain Utah corporation was a creditor and had transferred its account to the assignee. He promptly said he was a stockholder in that corporation and if it was to come into the controversy he was disqualified and could not hear it. The matter was raised alone by the judge, and to avoid his objection, and so that he would continue with the trial, counsel for both parties agreed that the corporation mentioned be withdrawn "from this controversy." No further reference was made to the matter at the trial, nor is it the subject of an assignment of error. It is now for the first time contended here that the judge was wholly disqualified and that the order appealed from is void. Section 20 of the Judicial Code provides that:

"Whenever it appears that the judge of any district court is in any way concerned in interest in any suit pending therein, or has been of counsel or is a material witness for either party, or is so related to or connected with either party as to render it improper, in his opinion, for him to sit on the trial, it shall be his duty, on application by either party, to cause the fact to be entered on the records of the court; and also an order that an authenticated copy thereof shall be forthwith certified to the senior circuit judge for said circuit then present in the circuit; and thereupon such proceedings shall be had as are provided in section fourteen."

Section 14 provides for the assignment of judges from other districts in enumerated cases. Section 20 is a revision of the Act of March 3, 1821, c. 51, 3 Stat. 643, Rev. Stat. § 601 (U. S. Comp. St. 1901, p. 484), but without change relevant here. It, with section 21 on personal bias or prejudice, covers the subject of disqualification of judges of the District Courts of the United States and controls the question before us. Like the statutes in some states, it does not prohibit a judge from acting nor declare his judicial action void merely because of the existence of disqualifying ground. Its operation is made to start "on application by either party," upon which the fact is entered on the record and proceedings follow for another judge. The matter is left to the parties litigant, and if they will not act then to the conscience of the judge. Where the parties desire him to continue, his sense of propriety will in most cases save him from an equivocal position. The statute proceeds upon a recognition of the fact that the interest of a judge, his relationship or connection, prior professional representation, or knowledge of facts in issue, may at times be so slight or inconsequential that the rights of the parties would be best subserved by his proceeding with the cause with their consent. Postponement and delay for slight ground might work denial of justice. Experience shows that where there is real reason judges are generally the first to discover and insist upon their disqualification. The confidence in them, rarely abused, is shown by the provision of section 20, which expressly commits one of the grounds to their own judgment. The law has been on the statute books of the United States for nearly a century, and the noticeable dearth of decisions under it indicates that cause for difference or controversy has seldom been given.

Spencer v. Lapsley, 20 How. 264, 15 L. Ed. 902, arose under the old statute which authorized the District Judge to certify the cause in

certain contingencies to the most convenient circuit court in an adjoining state. Such a certification on motion of the plaintiff was attacked by the defendant. The Supreme Court said:

"The act of Congress proceeds upon an acknowledgment of the maxim 'that a man should not be a judge in his own cause,' and requires a judge found in that predicament, on motion of either party, to make an order for the removal of the cause to another competent jurisdiction. No other order in this cause was made by the District Judge, and he was not authorized to act under the statute, except on motion, and when the motion was made the order was entered."

Consent of the parties will authorize a judge subject to this statute to continue in the exercise of jurisdiction. Coltrane v. Templeton, 45 C. C. A. 328, 106 Fed. 370. See In re Eatonton Electric Co. (D. C.) 120 Fed. 1010. In some jurisdictions there is by statute an absolute prohibition without exception against action by judges in interest or relation; in others, the parties are expressly authorized to consent; and in some the interests or relations are merely named as grounds of disqualification. Similar to the first of these is the prohibition in section 3 of the Court of Appeals Act of March 3, 1891, c. 517, 26 Stat. 827 (U. S. Comp. St. 1901, p. 548):

"That no justice or judge before whom a cause or question may have been tried or heard in a District Court, or existing Circuit Court, shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals." Judicial Code, § 120.

Moran v. Dillingham, 174 U. S. 153, 19 Sup. Ct. 620, 43 L. Ed. 930, and American Const. Co. v. Railway, 148 U. S. 372, 13 Sup. Ct. 158, 37 L. Ed. 486, involved the application of this statute. In McClaughry v. Deming, 186 U. S. 49, 22 Sup. Ct. 786, 46 L. Ed. 1049, there was a judgment of a tribunal organized contrary to the express direction of the law. The rule there recognized is that "a judge, who is prohibited from sitting by the plain direction of the law, cannot sit, and the consent that he shall sit gives no jurisdiction." These cases are not in point here. It has frequently been held by courts of the states on general principles that, where there is no statute prohibiting the judge from acting or declaring his action void, the action may be erroneous but is subject to consent or waiver. Moses v. Julian, 45 N. H. 52, 84 Am. Dec. 114; Stearns v. Wright, 51 N. H. 600; Crosby v. Blanchard, 7 Allen (Mass.) 385; L. & N. Ry. Co. v. Taylor, 93 Va. 226, 24 S. E. 1013; Jewett v. Miller, 12 Iowa, 85; Stone v. Marion County, 78 Iowa, 14, 42 N. W. 570; In re Taber, 13 S. D. 62, 82 N. W. 398; Barnes v. McMullins, 78 Mo. 260; Shope v. State, 106 Ga. 226, 32 S. E. 140; Hilton v. Miller, 5 Lea (Tenn.) 395.

The judge below was confronted by his natural desire on the one hand, and his official duty and the desire of the parties on the other. He would have failed in duty had he renounced a jurisdiction imposed by law, however disagreeable. The parties had come with their witnesses and were in the course of trial. His concern in the litigation which developed was remote, almost trivial. He was not a party to the proceeding, nor was the creditor in which he had a stockholding interest a party by name. The legal title and control of its account

had been transferred to the assignee for the benefit of creditors. Its account was not in dispute; the real question at the end was where or by whom the estate of the debtor should be administered—the court of bankruptcy or the assignee for the benefit of creditors. With full knowledge of the facts, the parties desired him to proceed; neither filed the application prescribed by the statute. Though the form of withdrawal of the creditor did not change the situation, we think it was the duty of the judge to go on with the trial.

The order is affirmed.