## BRAMWELL, Superintendent of Banks, v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court of Appeals, Ninth Circuit. June 30, 1924.)

No. 4208.

1. **Banks and banking ⬅➡80(7)—Bank deposit of trust funds by Indian agent creates "debt due United States," within priority statute.**

    Deposit in bank by an Indian agent of money held on trust for the Indians creates a "debt due the United States," within the meaning of Rev. St. 3466 (Comp. St. § 6372), giving priority to debts due the United States in cases of insolvency.

2. **Banks and banking ⬅➡80(4)—Bank held "insolvent," within statute giving preference to debts due the United States.**

    A bank, the value of whose assets was less than the amount of its indebtedness, and which voluntarily, by resolution of its board of directors, surrendered all its assets to the state superintendent of banks for the purpose of liquidation, held to have committed an act of bankruptcy and to be "insolvent," within the meaning of Rev. St. § 3466 (Comp. St. § 6372), giving preference to debts due the United States.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

3. **Bankruptcy ⬅➡60—Voluntary surrender of property to state officer for liquidation held "act of bankruptcy."**

    Under Or. L. §§ 6221–6223, which abolishes receiverships for insolvent banks and substitutes administration by the state superintendent of banks, a voluntary transfer of its property by an insolvent bank to the superintendent of banks for the purpose of liquidation is equivalent to putting it in charge of a receiver or trustee, and constitutes an "act of bankruptcy," under Bankruptcy Act, § 3a(4), being Comp. St. § 9587.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit in equity by the United States Fidelity & Guaranty Company against Frank C. Bramwell, Superintendent of Banks of the State of Oregon. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 295 Fed. 331.

The superintendent of the Klamath Indian reservation had on deposit with the First State & Savings Bank of Klamath Falls, Or., $96,000, which had come into his possession as such superintendent; the same being individual Indian moneys and tribal funds of the agency. The bank, with the appellee herein as surety, executed to the United States a bond to secure the payment of said deposits. On January 28, 1922, the bank had become insolvent, and by resolution of its board of directors its assets were turned over to the superintendent of banks of the state of Oregon, who took possession for liquidation. The appellee, as the surety on the bond, paid to the superintendent of the Indian reservation a sum of money equal to the amount so deposited by him, and the latter executed an instrument assigning all claim and interest of the United States to the appellee. The appellee filed its claim for reimbursement with the superintendent of banks of the state of Oregon. The claim was rejected as a preference claim, but was allowed as an unpreferred claim against the assets of the bank. The appellee thereupon brought its suit in the court below to enforce its claim of preference. A trial on the pleadings and the evidence resulted in a decree in favor of the appellee, de-

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

299 F.—45

claring it entitled to the payment of $96,932.30, with interest, out of the assets of the bank in preference to unsecured and unpreferred creditors and depositors.

Bowerman & Kavanaugh, of Portland, Or., and H. C. Merryman, of Klamath Falls, Or., for appellant.

Dey, Hampson & Nelson, and George L. Buland, all of Portland, Or., for appellee.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that the court below erroneously ruled that the deposit of the moneys by the superintendent created a debt due to the United States from the bank, and erred in deciding that the bank was insolvent within the meaning of section 3466 of the Revised Statutes (Comp. St. § 6372), and that it was error to decree to the appellee priority in the payment of its claim over unsecured and unpreferred creditors and depositors.

[1] Notwithstanding that the money on deposit with the bank stood in the name of the Indian agent and was held for the use and benefit of the Indians as their property, there can be no question but that it represented a debt due from the bank to the United States. This is recognized in the terms of the bond which was given to secure its payment, and it is the generally accepted doctrine as to all moneys held by officers of the United States in trust for the use and benefit of the Indians. The United States, under its treaty with the Klamath Indians, was the guardian of the Indians on the reservation. United States v. Humason (C. C.) 8 Fed. 71; United States v. Fidelity Trust Co., 121 Fed. 766, 58 C. C. A. 42; United States v. Comet Oil & Gas Co. (C. C.) 187 Fed. 674; United States v. Gray, 201 Fed. 291, 119 C. C. A. 529; Watson v. United States (C. C. A.) 263 Fed. 700; Central Nat. Bank of Tulsa v. United States (C. C. A.) 283 Fed. 368; United States v. State of Oklahoma, 261 U. S. 253, 43 Sup. Ct. 295, 67 L. Ed. 638.

[2] Section 3466 of the Revised Statutes (Comp. St. § 6372) provides as follows:

"Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

In Conard v. Atlantic Insurance Co., 1 Pet. 386, 7 L. Ed. 189, it was said:

"A mere inability of the debtor to pay all his debts, is not an insolvency within the statute; but it must be manifested, in one of the three modes pointed out in the explanatory clause * * * referred to."

And in Beaston v. Farmers' Bank of Delaware, 12 Pet. 102, 9 L. Ed. 1017, the court said:

"No evidence can be received of the insolvency of the debtor, until he has been divested of his property in one of the modes stated in the section."

In United States v. Oklahoma, 261 U. S. 253, 43 Sup. Ct. 295, 67 L. Ed. 638, the court held that the meaning of the word "insolvent," used in the act, and of the insolvency therein referred to, is limited by the language to "cases where a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment." Said the court:

"Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part."

In brief, the statute, as construed by the decisions of the Supreme Court, means this: That debts due the United States shall be first satisfied in cases where the debtor is insolvent and has not sufficient property to pay all his debts and in addition thereto either makes a voluntary assignment of his property or commits an act of bankruptcy, or his property is attached as that of an absconding or concealing debtor. As applied to the present case, the question whether the debt here involved was payable first to the United States out of the assets of the bank depends upon whether or not the bank made a voluntary assignment of its property or committed an act of bankruptcy. What was done by the bank was this: On January 28, 1922, the directors adopted a resolution that the superintendent of banks for Oregon be given full control of the affairs of the bank. It is stipulated that on that date the total value of the assets of the bank was less than the amount of its indebtedness. The superintendent of banks took possession of the property and business of the bank pursuant to the laws of the state of Oregon, and he continued in possession for the purpose of liquidation and administration of the bank's assets.

The appellant relies upon the Oklahoma case above cited. There the court held, first, that the bank in that case was not insolvent within the meaning of section 3466; and, second, that the complaint did not allege the commission of an act of bankruptcy. The court found that under the Oklahoma Banking Law insolvency arises whenever a bank is unable to pay all its debts and continue as a going banking concern, whereas, under section 3466, a bank is insolvent if it has not sufficient property to pay all its debts. In considering whether or not the Oklahoma bank had committed an act of bankruptcy under the National Bankruptcy Law (Comp. St. §§ 9585–9656), the court said:

"In this case it is not alleged that the Oklahoma state bank voluntarily placed itself in the hands of the bank commissioner under section 302, or that it made a voluntary assignment of its property; but it is alleged that the bank commissioner adjudged it insolvent and took charge and possession of its assets. No action on the part of the bank was necessary, and none is alleged."

In the case at bar, however, action on the part of the bank is clearly shown. The directors voluntarily placed the bank in the hands of the superintendent of banks and surrendered to him possession of all the assets thereof for the purpose of liquidation. We are of the opinion that thereby the bank committed an act of bankruptcy under subdivision 4 of section 3a of the Bankruptcy Act, which declares it to be an act of bankruptcy when one has—

"made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state or a territory, or of the United States."

In the Oklahoma case the conclusion was reached that the bank commissioner was not a receiver or trustee appointed because of insolvency within the meaning of the Bankruptcy Act, and that he did not take possession owing to the existence of insolvency within the meaning of the federal laws. But in the case at bar there was first insolvency as defined by section 3466, and the resolution of the board of directors was, we think, tantamount to a voluntary and general assignment within the meaning of the National Bankruptcy Act. Thereby the affairs of the bank passed absolutely out of the control of its officers and into the control of an officer whose duty was to liquidate the bank's business and distribute its assets among its creditors and depositors. It is true that in United States F. & G. Co. v. Bramwell, 108 Or. 261, 287, 217 Pac. 332, 341, the court said that:

"It would seem" that in the superintendent's taking possession of the assets of a bank "the bank's title to the assets would not be divested until the assets were sold, and that the dividing line at which the title would pass from the bank would be the time when the sale was made."

What was there said, however, does not negative the fact that the possession and control of the bank officers over the assets of the bank were as completely divested by their resolution and as completely vested in the superintendent of banks as they could be by any conceivable assignment for the benefit of creditors, and that the title to the assets, although it might be in abeyance until a sale by the superintendent of banks, could not possibly, under the facts in the case, ever be restored to the corporation, but must inevitably be divested in carrying out the purpose of the resolution.

A general assignment under the Bankruptcy Act is one in which the debtor transfers all, or substantially all, of his property to another in trust, to collect the amounts owing to him, to sell and convey the property, to distribute the proceeds thereof among the creditors, and to return the surplus, if any, to the debtor. 1 Loveland on Bankruptcy, 329; Missouri American Elec. Co. v. Hamilton-Brown Shoe Co., 165 Fed. 283, 91 C. C. A. 251; In re McCrum, 214 Fed. 207, 130 C. C. A. 555. And in order to be a general assignment, within the meaning of the Bankruptcy Act, it is not necessary that the assignment be formal, or that it be valid for all purposes. In re Federal Lumber Co. (D. C.) 185 Fed. 926. It was held, in Re C. H. Bennett Shoe Co. (D. C.) 140 Fed. 687, that a corporation organized under the laws of Connecticut committed an act of bankruptcy where, because of its insolvency, its stockholders signed an agreement for its dissolution and the transfer of its property to its directors as trustees to wind up its affairs. So, where part of the bankrupt's property had been taken charge of by a state official under a state law for the benefit of creditors, and the bankrupts thereupon conveyed to the same official the remainder of their property for the benefit of all their creditors, it was held that the two transactions together amounted to a general assign-

ment. In re Salmon (D. C.) 143 Fed. 396. And where a bankrupt conveyed his entire stock of merchandise and substantially all his property to a trustee to effect a settlement in composition with his creditors, authorizing the trustee to sell the property and distribute the net proceeds among the creditors, and, if he was not able to make such composition, to account for the proceeds to the bankrupt, it was held that the conveyance was an assignment for the benefit of creditors. In re Hersey (D. C.) 171 Fed. 998.

A confession of judgment by a debtor to a trustee for all his creditors was held a general assignment for the benefit of creditors and an act of bankruptcy. In re Green (D. C.) 106 Fed. 313. In Moody-Hormann-Boelhauwe v. Clinton Wire Clothing Co., 246 Fed. 653, 158 C. C. A. 609, it was held that a general assignment within the meaning of the Bankruptcy Act embraces any act by the alleged bankrupt having the effect of a conveyance of all its property and the appropriation of it to raise funds to pay its debts, share and share alike. In that case the corporation, having been dissolved by vote of stockholders, transferred its property to its directors as trustees under a state statute providing that the president, directors, and manager of the corporation should be trustees for the creditors and stockholders, with full power to settle the corporate affairs, collect debts, and divide the property among the stockholders after paying the debts. In Gill v. Farmers' & Manufacturers' Bank, 189 Mo. App. 401, 176 S. W. 1111, it was held that a special deposit by a debtor of all her assets with the bank which was one of her creditors, with directions to pay all creditors their pro rata share, constituted an assignment for the benefit of creditors, within the meaning of the Bankruptcy Act, and was an act of bankruptcy.

[3] Again, the law of Oregon (Or. L. tit. 35, c. 5) abolishes receiverships of insolvent banks and provides a substitute therefor in the superintendent of banks. We think it should be held that the voluntary transfer of the bank and its property to the superintendent of banks and the submission thereof to his administration in liquidation and disposition of the proceeds was in substance putting a "receiver or trustee" in charge of the bank's property under the law of the state and within the meaning of the Bankruptcy Act. The decision in the Oklahoma case is not authority to the contrary. There it was held that the bank commissioner in charge of the bank was not a receiver, as defined in the Bankruptcy Act, for the reason that he did not take possession because of the existence of insolvency, but acted only as an instrumentality of the state in the exercise of its police power to effect the protection of depositors, with authority to pay depositors promptly out of a state guaranty fund if necessary. There was no transfer in that case, nor assignment, nor any act of the officers of the bank by way of surrendering the bank's assets, but the bank commissioner upon his own initiative took possession under the provisions of the state law.

Under the laws of Pennsylvania, providing that at the instance of a judgment creditor a sheriff might upon execution sell all the property of a corporation debtor and distribute the proceeds among all the credi-

tors of the corporation, it was held that such proceedings resulted in placing the sheriff as "receiver or trustee" in charge of the property because of its insolvency, and constituted an act of bankruptcy. In re International Coal Mining Co. (D. C.) 143 Fed. 665. So in Re Hercules Atkin Co. (D. C.) 133 Fed. 813, it was held that the clause of the Bankruptcy Act, "where, 'because of insolvency, a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States' does not mean exclusively that a trustee must have been put in charge by order of a court, but embraces as well a case where liquidating trustees have been elected by an insolvent * * * corporation, as provided by the statute under which it is organized."

The decree is affirmed.