## In re McKINNON CO.

(District Court, E. D. North Carolina. December 15, 1916.)

1. BANKRUPTCY ⊜⇒60—ACTS OF BANKRUPTCY.

Under Bankr. Act July 1, 1898, c. 541, § 3, 30 Stat. 546 (Comp. St. 1913, § 9587), it is an act of bankruptcy for an insolvent debtor to apply for a trustee or receiver for his property, or for a receiver or trustee to be appointed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. ⊜⇒60.]

2. BANKRUPTCY ⊜⇒20(1)—ADMINISTRATION OF THE ESTATE OF THE BANKRUPT —STATE STATUTE.

Proceedings against an insolvent corporation under Revisal N. C. 1908, § 1219, providing for the appointment of a receiver, etc., do not preclude creditors from petitioning to have the corporation adjudged a bankrupt, notwithstanding the action of the state courts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. ⊜⇒20(1); Courts, Cent. Dig. § 1331.]

3. BANKRUPTCY ⊜⇒76(3)—PROCEEDINGS IN STATE COURT—ESTOPPEL OF CREDITORS.

One of the petitioning creditors, whose claims were small, secured a judgment against the alleged bankrupt, whereupon other creditors prayed for and obtained the appointment of a receiver by the state superior court pursuant to Revisal N. C. 1908, § 1219. The attorney for such petitioning creditor was appointed receiver, and the petitioning creditor expressed satisfaction, and thereafter the receiver as attorney filed the claim of the petitioning creditor, his client. The property of the alleged bankrupt was disposed of pursuant to the order of the superior court for the best possible price, and the receiver proceeded to collect other assets. Of the creditors, practically all filed their claims with the receiver; but some months after his appointment the petitioning creditors filed a petition, seeking to have the insolvent corporation adjudged a bankrupt. *Held* that, as all disputed claims would be determined by the superior court, and as the distribution of the assets of an insolvent corporation is clearly a matter of equitable cognizance, such assets constituting a trust fund for creditors, the petitioning creditors, having delayed and making no showing of prejudice, are estopped from denying their participation in the proceedings in the state court, particularly as the costs of distribution in the bankruptcy would greatly exceed those of continuing the administration in the state court.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ⊜⇒76(3).]

4. CORPORATIONS ⊜⇒544(2)—CREDITORS—TRUST FUND THEORY.

The assets of an insolvent corporation constitute a trust fund for the payment of its debts, and their administration is peculiarly within the jurisdiction of a court of equity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2162; Dec. Dig. ⊜⇒544(2).]

In Bankruptcy. In the matter of the McKinnon Company, alleged bankrupt. Petition by M. Rosenman & Son and others for an adjudication in bankruptcy. Petition denied.

John D. Bellamy & Son, of Wilmington, N. C., for petitioners.
J. G. McCormick, of Wilmington, N. C., for respondents.

CONNOR, District Judge. On September 30, 1916, M. Rosenman & Son, the Standard Oil Company, and the Keuster-Lowe Company,

creditors, in amounts aggregating about $600, filed their petition setting forth: That the McKinnon Company, a mercantile corporation, with its principal place of business at Maxton, N. C., in said district, was indebted to an amount exceeding $1,000. That said company was insolvent and that within four months preceding the filing of the petition it committed an act of bankruptcy, in that, in a suit instituted in the superior court of Robeson county, N. C., on July 29, 1916, against said company, its assets and property were placed in the hands of a receiver by said court, and were, at the time of filing said petition, being administered by said receiver under and pursuant to the orders of the court. Another act of bankruptcy was alleged, but the allegation is not sustained.

Respondent company, answering the petition, admits that on the date named its property was placed in the hands of J. E. Carpenter, receiver, by order of the superior court, as alleged. It also admits insolvency. It avers: That at or about the 28th day of July, 1916, one of the petitioners, M. Rosenman & Son, obtained a judgment, issued execution thereon for $152.75 and was about to levy same on its property, when another creditor, the Bank of Maxton, instituted suit in the superior court of Robeson county and secured an order appointing the receiver, with direction to him to take the assets and property of the corporation into his charge, sell the same, and apply the proceeds to the payment pro rata of its debts. That pursuant to said order said J. E. Carpenter took possession of its assets, consisting of a stock of goods, real estate, book accounts, and other choses in action. Acting under the orders of the court, the receiver sold the stock of goods for 55 cents on the dollar of its inventoried cost. The said sale has been, before the filing of the petition herein, approved and confirmed by the court. The receiver has diligently endeavored to collect the accounts and debts due the company. The proceeds of the sale of the goods and of such collections as he has been able to make are deposited by the receiver in the bank, awaiting the further orders of the said court. Respondent further avers: That petitioners, M. Rosenman & Son, assented to and acquiesced in the appointment of said receiver, who was the attorney of said petitioners and represented them in securing a judgment on their debt. That said petitioner, and the Standard Oil Company, have filed their claims with said receiver as provided by the state statute, and are estopped from joining in the petition herein. That it has no other interest in the proceeding, or the result thereof, than a desire that the creditors, shall receive the largest possible amount on their debts against the company. The company suggests, and urges upon the attention of the court: That an administration of the assets in bankruptcy will entail large and unnecessary cost. That the goods have been sold, and, to a large extent, the accounts collected. That the proceeds are now in the bank to the credit of the receiver, ready, upon the order of the court, to be distributed among the creditors, without delay or further expense.

[1-4] Among the acts of bankruptcy, which entitle the creditors to proceed against an insolvent debtor, are having "applied for a re-

ceiver or trustee, for his property, or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state," etc. Bankr. Act, § 3. The objection to the adjudication in this record is found in the allegation that the petitioners, M. Rosenman & Son and the Standard Oil Company, have, by their conduct in respect to the appointment of the receiver and his action in the administration of the estate, estopped themselves from filing or joining in the petition, asking that the respondent be adjudged a bankrupt. The uncontradicted facts in regard to this contention are:

M. Rosenman & Son, prior to July 28, 1916, placed their claim in the hands of J. E. Carpenter, Esq., attorney, residing at Maxton, N. C., for collection, who obtained judgment against respondent, sued out execution thereon, and was proceeding to have it levied on its property. Some offers were made for a compromise; which were rejected, whereupon the Bank of Maxton, a creditor of the McKinnon Company, in its own and the behalf of other creditors, for the purpose of preventing a preference and of securing a pro rata distribution of its assets, instituted an action in the superior court of Robeson county, setting forth the jurisdictional facts, and asking for the appointment of a receiver, to take charge of, convert into cash, and distribute the assets and property of said corporation. Pursuant to the prayer in the complaint, the judge of said court, on July 29, 1916, appointed J. E. Carpenter, Esq., the attorney of petitioners M. Rosenman & Son, receiver, who qualified by filing a bond, approved by the court, and proceeded immediately to take into his possession and make an inventory of the goods and other assets. He also notified his clients, M. Rosenman & Son, of the situation, and they replied that they had every confidence in him and were glad that he was appointed receiver. The said attorney filed, as required by the North Carolina statute in such cases, the claim of the said M. Rosenman & Son. He heard nothing further from them until notified that they had filed the petition herein, on September 30, 1916. The receiver advertised for creditors of said insolvent corporation, and, acting under and pursuant to the orders of the superior court, sold the stock of goods at 55 per cent. of their inventoried price, which sale was duly confirmed by the court, prior to the date upon which the petition herein was filed. The proceeds of the sale were deposited in the Bank of Maxton, to the credit of the receiver. He also began at once to make every possible effort to collect the accounts due the corporation. All of the creditors of the corporation, aggregating some $20,000, other than petitioning creditors, whose claims aggregate $648, have assented to said receivership and desire the estate administered through that proceeding.

Affidavits by counsel representing other creditors of respondent are filed, in which they express the opinion that the creditors will receive a larger dividend from the receivership than through an administration in the bankrupt court. It is conceded by all parties that the receiver, J. E. Carpenter, is a man of high character, and in all respects a competent and proper person to continue the administration of the estate. He states that the administration of the estate has

been practically concluded, there is very little more to be done, that an administration by a trustee in bankruptcy could not add one dollar to the assets, but would diminish the amount received by the creditors. I am of the opinion that this is true. The only suggestion made to the contrary is that the goods may have been sold for a larger sum; but no evidence is offered to sustain the suggestion. They were sold under the supervision of the superior court, and, after full notice, the sale has been confirmed. There is no suggestion of either wrongdoing or negligence by the receiver. When it is noted that the receiver was appointed July 29, 1916, and the creditor now making the suggestion was promptly notified, that his own attorney, in whom he expressed confidence, and does not now suggest bad faith, made the sale, and it is further noted that this creditor resides and his place of business is within a short distance, with daily communication by rail, of Maxton, there would seem to be but little force in the objection, made two months after the appointment of the receiver. He must have known that the goods were of a character which rendered a prompt sale necessary.

It appears that the McKinnon Company owned real estate upon which D. Boyd Kimball held a mortgage for money borrowed by said company, bearing date February 2, 1915, and duly recorded on February 8, 1915, for $6,000. The note was past due. Guggenheimer & Co., of Richmond, held a second mortgage on the same real estate to secure a debt of $350, dated and recorded more than four months prior to the date of the petition herein. The receiver advertised the land for sale at public auction, and at the sale the Bank of Maxton became the purchaser at the price of $5,500. The receiver delayed the confirmation of the sale because the bankruptcy proceeding was pending, and because he hoped to secure an advanced bid. He has been unable to secure a larger bid. The receiver advertised for creditors to prove their claims, as required by the North Carolina statute, and, in addition thereto, notified all creditors by mail of his appointment. With the exception of the Keuster-Lowe Company, every creditor has filed his claims with the receiver and made themselves parties to the proceedings in the state court. A list of the creditors and amounts of their claims is attached to his affidavit. The receiver states that he has not paid, and does not intend to pay, any claims against the McKinnon Company, until notice has been given each creditor to file objection to said claims; that when objections are filed it is his purpose, as the state statute requires him to do, to submit the same to the superior court for decision; and that no payment will be made until ordered by the court. It will be observed that the proceeding in the state court was brought and is being conducted under the provisions of a statute authorizing any creditor, in his own behalf and in behalf of all other creditors of an insolvent corporation, to institute an action, in the nature of a creditors' bill, for the purpose of winding up the business, and, through the medium of a receiver, bringing to sale its property and paying the proceeds to the creditors according to their priorities. Pell's Rev. (1908) c. 21, § 1219.

Proceedings against an insolvent corporation, under the provisions

of this statute, do not preclude the creditors from resorting to a petition to have the corporation adjudged bankrupt, and, notwithstanding the action of the state courts, have its assets administered in the bankrupt court. It is settled by well-considered decisions of the federal courts, that:

"Where a debtor makes a general assignment for the benefit of his creditors, and judicial proceedings are instituted to enforce and carry out the assignment, creditors who, on being made parties to such proceedings, do not repudiate the assignment, nor begin proceedings in bankruptcy, but file their claims under the assignment, and participate in the administration of the estate, and suffer the assignee to sell the property and collect the proceeds, involving a delay of several months, and the incurring of costs and expenses, are estopped thereafter to file a petition in involuntary bankruptcy against the assignor, based solely on the ground of the assignment." Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337 (C. C. A. 6th Cir.).

In an exhaustive opinion in this case, reviewing the English and American decisions, Circuit Judge Taft, with the concurrence of Judge Lurton, referring to the course pursued by the petitioning creditors, said:

"They are alleged to have become parties to the assignment proceedings, to have filed their claims under the assignment, to have requested a reference to pass upon the claims, the accounts of the assignee, and the questions of distribution. They waited 3½ months before filing their petition. By their acquiescence, they certainly induced the assignors, the assignee, and the purchasers of the assets * * * to believe that they would not seek to set aside the assignment. Were the assignment to be set aside now, it would avoid every sale the assignee has made, and revest in the trustee in bankruptcy the title of the assignors. It is conceded that the distribution under the assignment would be exactly the same as under the bankruptcy proceedings. The bankruptcy proceedings will only increase the costs, and possibly defeat the costs already earned in the state court proceedings. Had these creditors filed their petition soon after the assignment, all the unjust results of their delay pointed out would have been avoided, for then the assignee would not have sold the assets, and the state officers would not have rendered the services, and the creditors would not have distribution delayed by four months. As it is, we think the answer stated a good defense, and that the court erred in not allowing it to be filed."

While the facts recited are not, in all respects, the same as those disclosed in this case, they illustrate the principle upon which the conclusion is based. It will be observed that the appeal in the case cited was taken from the refusal of the District Judge to permit the answer to be filed. In this his judgment was reversed. When the answer was filed, and evidence heard, the District Judge was of the opinion that, upon the facts disclosed, the petitioners were not estopped. This conclusion he set forth in a well-considered opinion, to be found in 96 Fed. 579. Upon a second appeal his judgment was affirmed. 100 Fed. 426, 40 C. C. A. 474. Judge Taft says that it appears that the petition was filed shortly after the assignment was made, and withheld, under promise of a speedy settlement and composition of the claims by the defendant, which would have made proceedings in bankruptcy unnecessary. He concludes that, as the delay was due to the solicitation of the respondents, no harm could have come to them by reason of it.

In Durham Paper Co. v. Seaboard Knitting Mills, 121 Fed. 179 (D. C. N. C.), Judge Purnell held that, when it is shown that the petitioners have filed their verified claims against the estate of a debtor, who had made a general assignment, with the clerk of the superior court, as required by the state statute, and permitted the property to be sold and a large part of the proceeds to be disbursed, they would be estopped from filing a petition seeking to have the debtor adjudged an involuntary bankrupt. So, in Lowenstein v. Henry McShane Mfg. Co., 130 Fed. 1007, Judge Morris (D. C. Md.), upon the facts appearing upon the evidence, said:

"This action, it seems to me, was an election by those two creditors to avail [themselves] of the proceedings in the state court, and it appears that, during the period between their intervention in that case and their filing the petition in bankruptcy, much was done by the receivers in the state court."

He held them estopped. It is held in Re Salmon & Salmon (D. C.) 143 Fed. 395, that, upon the facts appearing in the record and fully discussed by District Judge Pollock, the petitioning creditors were not estopped. It appears in that case that the proceedings in bankruptcy were begun on the same day, and at an hour prior to the proceeding in the state court. Attorneys for petitioning creditors "diligently and persistently sought to speed the proceeding. Upon notice served, the claims of the petitioning creditors were presented to the referee appointed by the state court, and their claims allowed." The judge was of the opinion that the action of the petitioners, in that respect, was not voluntary. In Re Curtis, 94 Fed. 630, 36 C. C. A. 430, as said by Circuit Judge Jenkins, the creditors were "in peculiar position"—and easily distinguished from the attitude of the petitioners, Rosenman & Son. He further says:

"It is shown by the record that certain transfers of property by the bankrupts were made, which the petitioning creditors insisted were fraudulent, and certain other frauds are asserted, which need not be detailed, and that knowledge of these fraudulent transactions was not possessed by the petitioning creditors prior to the 1st day of November, 1898, when this petition was presented; that their claims were filed under the assignment in ignorance of these alleged fraudulent transactions. Under the circumstances, and in view of the fact that no legal detriment has resulted to any one from the filing of claims under the assignment, we are of opinion that the petitioning creditors are not precluded by the mere fact of filing their claims with the assignee from selecting another forum, in which, as they think, their rights as against supposed fraudulent transactions may be the better protected."

In Utz & Dunn Co. v. Regulator Co., 213 Fed. 315, 130 C. C. A. 17 (C. C. A. 8th Cir.), Judge Hook discusses the question in the light of the facts in that case, concluding:

"It is an attempt by two of a number of creditors to use a lawful act of their debtor, which they had approved and confirmed with full knowledge of all the circumstances and in the carrying out of which they had joined, as the reason and ground for an antagonistic proceeding. Had the assignment been fraudulent, or had they been deceived or denied the opportunity of full choice, the case might be different."

From a careful examination of these and other authorities, while I would not conclude that the mere filing of the claim with an assignee or receiver operated to estop the creditor from thereafter join-

ing in a petition to have the insolvent creditor adjudged bankrupt, I am constrained to think that if, with full knowledge of the situation and of his rights, he delayed such action, making no suggestion to those interested in the administration of the estate until the property was sold, expenses incurred, and rights of innocent persons attached, he should not be permitted to proceed in a bankrupt court after long delay, upon the sole ground that the assignment was made or the receiver appointed. Not only the respondent, but the other creditors interested in securing the largest possible dividend on their debts, are entitled to be protected. It is manifest that more than 90 per cent. in number and a larger percentage in amount of the creditors of the McKinnon Company, equally as well informed and entitled to consideration as the petitioning creditors, honestly, and I am fully convinced correctly, think that the interests of all of the creditors will be promoted, and the amount received on their debts enlarged, by permitting the receiver to continue and conclude the settlement of this estate. That the cost will be considerably less is not open to controversy. If the petitioners had, immediately upon being notified that the state court had taken jurisdiction of the affairs of this insolvent corporation and appointed a receiver, before the property was disposed of, or any other than the initial cost accrued, their status would have been made better, and their claim upon the consideration of the court much stronger. They waited two months before proceeding, or, so far as the record discloses, making any suggestion of a purpose to act; on the contrary, petitioners, M. Rosenman & Son, whose attorney was named by the court receiver, expressed themselves as "glad he was appointed, and their perfect confidence in him." Their claim, as was that of the Standard Oil Company, was filed, and the receiver, as was his duty, proceeded, in strict compliance with the orders of the state court, to notify the creditors and sell the property. He has acted in perfect good faith, and there is no suggestion that he will not continue to do so. There was, on the hearing, some suggestion that certain alleged claims were not valid; but it was stated that such claims would not be filed or their participation in the distribution of the assets asked. Some suggestion was made that the proceedings in the state courts generally were not "satisfactory," no suggestion was made that, in this case, the state court would not deal with the situation promptly and in justice to all of the creditors. The cases cited arose out of proceedings relative to assignments for the benefit of creditors. The same principle applies in respect to suits brought in the state courts to wind up insolvent corporations. Lowenstein v. McShane Co., supra.

The assets of an insolvent corporation constitute a trust fund for the payment of its debts, and their administration is peculiarly within the jurisdiction of a court of equity. The interest of all of the creditors are, or should be, carefully guarded by the court. The corporation or the stockholders' rights are subordinate to those of the creditors. In this case it is apparent that these rights are being fully protected by the state court. The language used by Judge Bradford in Woolford v. Diamond State Steel Co. (D. C.) 138 Fed. 582, is ap-

propriate upon the facts developed in this case. There the corporation was in the hands of receivers appointed by the state courts, and its assets being administered satisfactorily to a large majority of the creditors. Upon the petition of a small minority to have the corporation adjudged bankrupt, and, until the hearing, to have receivers appointed, after an exhaustive discussion of the evidence, he says:

"I can perceive no possible advantage to the creditors of the company to be derived from the prosecution of the bankruptcy proceedings, and am convinced that such proceedings could enure only to their detriment. An administration of the property of the company under the present receivership, I have no doubt, will be advantageous to its creditors and possibly to its stockholders."

Without further pursuing the discussion, I am of the opinion that, by the course pursued by the petitioners, M. Rosenman & Son, including the delay of two months, during which goods have been sold and the estate reduced to cash ready for distribution, they are estopped from prosecuting the petition. This conclusion leaves but two petitioning creditors, resulting in the dismissal of the petition. If the McKinnon Company were adjudged bankrupt, in view of the facts developed, it would be the duty of the trustee, when elected, to intervene in the action pending in the state court, rather than institute a new proceeding. There is no question of preference or fraudulent transfer of property. The sole equity is, who are the creditors, and in what amounts are they entitled to participate in the distribution of the proceeds of the assets of an insolvent corporation.

Objection was made to the verification of the petition by one of the petitioners. I do not deem it necessary to pass upon the objection.

The petition will be dismissed, at the cost of the petitioners.